The appellant, Allen Wayne Phillips, was convicted of capital murder for the killing of Jeffery Ramsey, a child under the age of 14 years. See § 13A-5-40(a) (15), Ala. Code 1975. By a vote of ten to two, the jury recommended a sentence of death. The trial court accepted the jury's recommendation and sentenced the appellant to death. Because we must reverse on a jury instruction issue, an extensive statement of the facts of the case is unnecessary. Instead, we will set forth only the facts relevant to the issues we address.
 I.
The appellant argues that the trial court erred when it did not instruct the jurors that they could draw no adverse inference from his failure to testify. During the charge conference, the following exchange occurred:
 "[The Court]: I assume you want the charge on the defendant not testifying and they are to draw no inference from that.
"[Defense Counsel]: Yes, we do want that.
 "[The Court]: That will be the standard charge on that."
(R. at 885). However, when the trial court charged the jury the following day, it did not give a "no-adverse-inference" instruction. At the conclusion of the charges, the defense stated that it was "satisfied with the Court's charge with the exception of capital murder definition." The defense did not object to the trial court's failure to give the charge until the appellant filed his motion for a new trial. Under Rule 21.3, Ala. R.Crim. P., "[n]o party may assign as error the court's giving or tailing to give a written instruction . . . unless the party objects thereto before the jury retires to consider its verdict, stating *Page 294 
the matter to which he or she objects and the grounds of the objection." Because the appellant raised this issue for the first time in his motion for a new trial, his objection is untimely. Therefore, we will review this issue under the plain error doctrine. Ex parte Land, 678 So.2d 224, 232 (Ala.), cert. denied, — U.S. —, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996); Rule 45A, Ala.R.App.P.
Alabama courts have not determined whether the failure to give a "no-adverse-inference" instruction when the appellant has indicated that he wants such an instruction constitutes plain error. Therefore, we must determine whether the that court's failure to give the "no-adverse-inference" charge constitutes plain error under these circumstances. Plain error is error that "has or probably has adversely affected the substantial right of the appellant." Rule 45A, Ala. R.App.P.
In Carter v. Kentucky, 450 U.S. 288, 300, 101 S.Ct. 1112, 1119,67 L.Ed.2d 241 (1981), the United States Supreme Court held:
 "The principles enunciated in our cases construing this privilege, against both statutory and constitutional backdrops, lead unmistakably to the conclusion that the Fifth Amendment requires that a criminal trial judge must give a `no-adverse-inference' jury instruction when requested by a defendant to do so.
 "In Bruno [v. United States, 308 U.S. 287, 293-94, 60 S.Ct. 198, 200, 84 L.Ed. 257 (1939)], the Court declared that the failure to instruct as requested was not a mere `technical erro[r] . . . which do[es] not affect . . . substantial rights. . . .' It stated that the `right of an accused to insist on' the privilege to remain silent is `[o]f a very different order of importance . . .' from the `mere etiquette of trials and . . . the formalities and minutiae of procedure.'"
Carter, 450 U.S. at 300, 101 S.Ct. at 1119 (emphasis added). The Court emphasized the importance of properly instructing jurors on the law, especially in the area of the Fifth Amendment protection against self-incrimination, because "`[t]oo many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are . . . guilty of crime . . . .' Ullmann v. UnitedStates, 350 U.S. 422, 426, 76 S.Ct. 497, 500, 100 L.Ed. 511
[1956]." Carter, 450 U.S. at 302, 101 S.Ct. at 1120.[1]
In Perry v. State, 368 So.2d 310 (Ala. 1979), the Alabama Supreme Court addressed the issue of whether the trial court's refusal to instruct the jury that it could not draw an adverse inference from the defendant's failure to testify could constitute harmless error. According to the Alabama Supreme Court,
 "the constitutional guarantee against self-incrimination (Art., § 6, Alabama Constitution 1901), as augmented by [§ 12-21-220, Ala. Code 1975], renders the refusal of a requested jury instruction on the legal effect of an accused's exercise of that right reversible error. . . .
 "Our holding effectively eliminates the application of Rule 45 in the factual context of the instant case. Whether the constitutional right `not [to] be compelled to give evidence against himself implicitly gives an accused the further right to have the jury instructed on the legal effect of his exercise of that right, we need not here decide. The legislative expression of the public policy emanating from that organic guarantee is clear; and this statutory right that `his failure to make [a request to testify] shall not create any presumption against him' is so inexorably tied to the fundamental light against self-incrimination as to defeat any application of the harmless error doctrine. Subjective analysis on a case-by-case basis, to determine whether such error has affected the substantial rights of the accused, has no field of operation where, as here, the denial of the requested instruction is tantamount to the denial of the fundamental right of the accused, as constitutionally and statutorily mandated, to elect not to testify."
Perry, 368 So.2d at 312 (emphasis added).
We recognize the seriousness of the charges involved in this case. However, our *Page 295 
human reaction to the death of a child must be tempered by the law and the important constitutional issue involved. We are not alone in our concerns. During the hearing on the appellant's motion for a new trial, the trial judge expressed his concern about the allegation that he had not given a "no-adverse-inference" instruction and the ramifications of such an omission. As he pointed out, "I don't think anybody really wants to go through a new trial in this case. That's not the problem. Nobody really wants to do it, but we all want to do what we were supposed to do." (Supp. R. at 24).
The State argues that the failure to give the "no-adverse-inference" instruction "did not seriously affect the integrity and fairness of the proceedings and it did not have an unfair, prejudicial impact on the jury's deliberations." Specifically, it argues that the trial court properly instructed the jury that an inference of guilt could only be drawn from testimony and items admitted into evidence and that the appellant was entitled to a presumption of innocence. However, the United States Supreme Court rejected a similar argument in Carter.
According to the Supreme Court,
 "The other trial instructions and arguments of counsel that the petitioner's jurors heard at the trial of this case were no substitute for the explicit instruction that the petitioner's lawyer requested. Although the jury was instructed that `[t]he law presumes a defendant to be innocent,' it may be doubted that this instruction contributed in a significant way to the jurors' proper understanding of the petitioner's failure to testify. Without question, the Fifth Amendment privilege and the presumption of innocence are closely aligned. But these principles serve different functions, and we cannot say that the jury would not have derived `significant additional guidance,' Taylor v. Kentucky, 436 U.S. 478, 484, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468, from the instruction requested. See United States v. Bain, 596 F.2d 120
(CA5); United States v. English, 409 F.2d 200, 201 (CA3)."
Carter, 450 U.S. at 304, 101 S.Ct. at 1121.
In light of the existing caselaw and the important constitutional issues implicated, we conclude that the trial court's failure to give the "no-adverse-inference" instruction, after the defense indicated that it wanted the instruction to be given, constitutes plain error. As the United States Supreme Court noted in Carter,
 "A trial judge has a powerful tool at his disposal to protect the constitutional privilege — the jury instruction — and he has an affirmative constitutional obligation to use that tool when a defendant seeks its employment. No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, if requested to do so, use the unique power of the jury instruction to reduce that speculation to a minimum."
Carter, 450 U.S. at 303, 101 S.Ct. at 1120 (footnote omitted). Our holding is limited to fact situations similar to this case, where the defense has indicated that it wants a "no-adverse-inference" instruction, but, for whatever reason, the trial court does not give such an instruction. Furthermore, we also recognize that trial counsel may make a strategic decision not to request such an instruction. Thus, the failure to give a "no-adverse-inference" instruction will not always constitute plain error.
The appellant raises several other important and troubling issues. Because we must reverse on the jury instruction issue, we express no judgment on the remaining issues. "Our decision not to address [the merits of] the remaining issues raised by the appellant should not be construed as an approval of the manner in which the trial was conducted in regard to those issues."Fletcher v. State, 621 So.2d 1010, 1024 (Ala.Cr.App. 1993). Nevertheless, because some of the issues may arise if the case is retried, we feel compelled to make the following observations and admonitions.
 II
The appellant argues that the trial court improperly instructed the jury on reckless murder. At the charge conference, the appellant requested a charge on reckless murder. After some discussion, the trial court *Page 296 
stated that it would not give a charge on reckless murder. However, during its oral charge, the trial court did charge on reckless murder. Following the oral charge, the State objected to the giving of the charge on reckless murder. The appellant did not object to the giving of the charge, and the trial court did not rule on the State's objection.
A person commits the crime of reckless murder if "[u]nder circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person." § 13A-6-2(a) (2), Ala. Code 1975. A charge on reckless murder is not appropriate if the defendant's actions are directed toward one particular person. Sockwell v. State,675 So.2d 4 (Ala.Cr.App. 1993), aff'd, 675 So.2d 38 (Ala. 1995), cert. denied, 519 U.S. 838, 117 S.Ct. 115, 136 L.Ed.2d 67 (1996);Fisher v. State, 587 So.2d 1027 (Ala.Cr.App.), cert. denied,587 So.2d 1039 (Ala. 1991), cert. denied, 503 U.S. 941,112 S.Ct. 1486, 117 L.Ed.2d 628 (1992); Walker v. State, 523 So.2d 528
(Ala.Cr.App. 1988); Northington v. State, 413 So.2d 1169
(Ala.Cr.App. 1981). In Northington, we explained:
 "The evidence in this case, even when viewed in the light most favorable to the prosecution, reveals that the defendant's acts and omissions were specifically directed at a particular victim and no other.
 "The State presented no evidence that the defendant engaged in conduct `under circumstances manifesting extreme indifference to human life' for, while the defendant's conduct did indeed evidence an extreme indifference to the life of her child, there was nothing to show that the conduct displayed an extreme indifference to human life generally. Although the defendant's conduct created a grave risk of death to another and thereby caused the death of that person, the acts of the defendant were aimed at the particular victim and no other. Not only did the defendant's conduct create a grave risk of death to only her daughter and no other, but the defendant's actions (or inactions) were directed specifically against the young infant; F. Wharton, The Law of Homicide (3rd ed. 1907) at Section 129. This evidence does not support a conviction of murder as charged under Section 13A-6-2(a) (2)."
413 So.2d at 1171-72. The evidence introduced at trial indicated that the appellant directed his actions toward only one victim, Jeffery Ramsey. Therefore, the charge on reckless murder was not appropriate. Should this case be retried, we caution the trial court not to give an instruction on reckless murder unless additional evidence regarding "extreme indifference to human life generally" is introduced.
 III
The appellant argues that "the trial court's charge to the jury was inadequate, as a matter of law, to distinguish between capital murder and lesser degrees of murder on the issue of a particularized intent to kill the victim." If this case is retried as a capital case, we caution the trial court to be careful, when defining intent, to distinguish between the intent required to support a conviction for capital murder and the intent required to support a conviction for a lesser degree of murder. See Starks v. State, 594 So.2d 187 (Ala.Cr.App. 1991).
 IV
At trial, the State argued that the offense was especially heinous, atrocious, or cruel as compared to other capital offenses. § 13A-5-49(8), Ala. Code 1975. The trial court did find the existence of this aggravating circumstance, but it did not state the facts upon which it based its finding. Should this case be retried as a capital murder case and should the State again rely on this aggravating circumstance, we caution the trial court to consider the evidence carefully under the standard set forth in Ex parte Kyzer, 399 So.2d 330, 334 (Ala. 1981), in determining whether this offense is one of "those conscienceless or pitiless homicides which are unnecessarily torturous to the victim."
 V
Finally, the appellant argues that his statements to law enforcement officers *Page 297 
should have been suppressed because "the statements were taken without the advice of counsel after a request for counsel had been made by defendant, and were admitted without a proper foundation and demonstration by the State of the voluntariness of said statements or the knowing and intelligent waiver of defendant's constitutional rights." Extrajudicial confessions are prima facie involuntary and inadmissible. Ex parte Gaddy,698 So.2d 1150, 1151-52 (Ala.), cert. denied, — U.S. —,118 S.Ct. 634, 139 L.Ed.2d 613 (1997); Johnson v. State,620 So.2d 709, 712 (Ala. 1993), opinion after remand, 620 So.2d 714
(Ala.Cr.App.), cert. denied, 510 U.S. 905, 114 S.Ct. 285,126 L.Ed.2d 235 (1993). Therefore, we remind the prosecution on remand that it carries the burden of proving that the appellant's statement to the police was voluntary. Ex parte State,718 So.2d 727 (Ala. 1998).
Because of the tragic and disturbing details of this case, we are reluctant to reverse the appellant's conviction. However, we do not believe this conviction would withstand the many levels of judicial scrutiny that attach when a defendant is convicted of a capital offense and sentenced to death. Accordingly, we reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
All judges concur.
[1] In footnote 21 of its opinion, the Supreme Court, in emphasizing the importance of limiting a jury's speculation as to why a defendant does not testify, noted that a survey showed that "37% of those interviewed believed that it is the responsibility of the accused to prove his innocence." Carter, 450 U.S. at 303
n. 21, 101 S.Ct. at 1120 n. 21 (quoting 64 A.B.A.J. 653 (1978)).