William Ray Weaver appeals from his convictions for felony murder committed during a robbery, felony murder committed during a burglary, first-degree robbery, second-degree burglary, and second-degree theft. Weaver was originally convicted *Page 974 
of the capital offense of robbery-murder, as alleged in count one and was sentenced to death. This Court affirmed the conviction, Weaver v. State, 678 So.2d 260 (Ala.Cr.App. 1995), but our affirmance was reversed and the cause was remanded for a new trial by the Alabama Supreme Court, Ex parte Weaver, 678 So.2d 284
(Ala. 1996). On December 15, 1997, Weaver was retried before a jury on the charges that he murdered Aubrey Ray Estes during a break-in of the Battery Mart automobile parts store in Etowah County. He was charged with two counts of murder made capital because it was committed during a robbery, see § 13A-5-40(a)(2), Ala. Code 1975 (the counts were charged in the alternative), and two counts of murder made capital because it was committed during a burglary, see § 13A-5-40(a)(4), also charged in the alternative. Weaver was convicted of felony robbery-murder as a lesser included offense of the capital murder charges alleged in counts 1 or 2. He was convicted of felony burglary-murder as a lesser included of the capital murder offense alleged in counts 4 or 5. He was convicted of first-degree robbery, second-degree burglary, and second-degree theft, as lesser included offenses "as charged in the indictment." Following the guilty verdict, the trial court sentenced Weaver as an habitual offender to life imprisonment without parole for each of the felony-murder convictions, to life imprisonment without parole for the first-degree robbery conviction, to life imprisonment for the second-degree burglary conviction, and to life imprisonment for the second-degree theft conviction. This appeal follows.
The State's evidence tended to show the following. On the night of December 2, 1989, Weaver, Henry Gene Whitmore, and Daniel Lee "Dino" Leslie drove to the Battery Mart in Attalla. Weaver drove the car. The three men entered the property through a hole in a fence surrounding the store and Weaver then used a crowbar to pry the door to the Battery Mart open. The men took some batteries and were leaving the building when they were confronted by the owner, Aubrey Ray Estes, who was spending the night in his store to prepare for a large sale he was conducting the next day. According to Whitmore, Weaver followed Mr. Estes into his office. Whitmore testified that he heard someone "hollering" in the office and went outside with "Dino," carrying some batteries. He said that Weaver later came out of the building carrying a T-shirt, a crowbar, and some money. They returned to an apartment in the Emma Sansom housing project where they stored the stolen batteries and divided the money taken from the Battery Mart. Aubrey Ray Estes's wife discovered him the next day, lying dead on the floor of his office in the Battery Mart. An inventory of the store indicated a loss in batteries and cash in the amount of approximately $1500. Dr. Joseph Embry of the Alabama Department of Forensic Sciences conducted an autopsy on the 62-year-old Estes. He testified that Mr. Estes, who weighed only 128 pounds, had suffered some 13 blows to the head and body from a blunt object, and that the bruises and wounds were consistent with having been beaten with a crowbar. An examination of Mr Estes's heart, lungs, and brain indicated that he died from a combination of his head injuries and the effects of arteriosclerosis in his coronary arteries. In short, Dr. Embry believed that Mr. Estes died of a heart attack induced by the beating he suffered.
 I.
Weaver argues that the trial court erred in allowing Mr. Keith Pitts to act as special prosecutor in the second trial of his case, because, he argues, Mr. Pitts had not been appointed to that position by either the court or the state attorney general, as required by § 12-17-186, Ala. Code 1975.[1] *Page 975 
At trial, defense counsel's rationale for this position was as follows:
 "I think the conflict is that [Keith Pitts] is a practicing lawyer in Etowah County who has a substantial criminal practice with an ongoing relationship by virtue — even an adversarial position with the D.A.'s office. I realize he was the D.A. when this case was tried [the first time] and, therefore, has that knowledge of the case, but I submit that the proper way to bring in — when there is a conflict of interest, the proper person to get would be the attorney general's office. . . ."
(R. 21.) Mr. Pitts explained that he had been the prosecutor who tried the case previously and that the victim's family had requested that he prosecute the case on retrial. He noted that two of the three current assistant district attorneys had previously represented Weaver's codefendants and were thus disqualified from prosecuting Weaver, that the third assistant district attorney knew nothing about the case, and that the District Attorney had suffered a heart attack and was not spending much time in the courtroom. (R. 26.) Mr. Pitts acknowledged that he had been designated by the District Attorney to prosecute this case, that he had taken an oath to uphold the law, and that he had not received any deals for preferential treatment of his other clients as a result of his acting as a special prosecutor in this case. (R. 26-29.) The trial court, noting that since August 4, 1997, the defense had been aware that Mr. Pitts was acting as the prosecutor in this case, denied Weaver's motion to disqualify Keith Pitts, saying, "I don't see any reason why he can't try this case and I don't see on the record [where] you have represented that there is any wrongdoing on his part. He is an officer of the Court and he represents that he represents the State, and until I'm shown otherwise, I have got to accept that as a fact." (R. 29.)
The trial court was correct. We do not believe § 12-17-186, Ala. Code 1975, is applicable in this case. Certainly, it should not be interpreted to prevent a district attorney from appointing a former assistant district attorney to retry a case, especially where, as in this case, there was no reason for the attorney appointed to be disqualified, he had previously prosecuted the case, and the family of the victim requested that he be retained to retry the case. We agree with the State that § 12-17-198, Ala. Code 1975, allows the district attorney to hire a part-time assistant district attorney.[2]
 "`A defendant in a criminal prosecution is entitled to a fair and impartial trial, and nothing more. So long as the conduct of the special prosecutor comports to due and orderly procedure a defendant is in no position to complain as to who conducts the prosecution. Jones v. State, 16 Ala. App. 154, 75 So. 830
[(1917)]. Certainly, as here, where special counsel acted with the consent of the regular prosecutor, and with permission *Page 976 
 of the court, no abuse of the discretion vested in the trial court in such matters is present.'"
McCrory v. State, 505 So.2d 1272, 1279-80 (Ala.Cr.App. 1986), quoting Brooks v. State, 45 Ala. App. 196, 200-01, 228 So.2d 24 (1969), quoting McCain v. City of Montgomery, 38 Ala. App. 568, 92 So.2d 678 (Ala.Ct.App. 1956). The trial court did not abuse its discretion in allowing Keith Pitts to serve as a special prosecutor in this case.
 II.
Weaver argues that there was not sufficient corroborative evidence to allow a conviction based on the testimony of an accomplice and, therefore, that the trial court erred in denying his motion to dismiss. Specifically, he argues that the testimony given by witness Faye Edwards, who provided corroboration to the testimony of accomplice Henry Gene Whitmore, was unbelievable because: (1) her son, one of Weaver's co-defendants, had pleaded guilty to a lesser included offense and had been placed on probation; (2) she had changed a portion of her testimony from the first trial; (3) she testified that her son did not own a car although another witness testified that her son had purchased a car from him in 1992; and (4) another witness had testified that Ms. Edwards's reputation in the community for being truthful was not good.
Faye Edwards testified that on the night of the murder she saw Weaver and Henry Gene Whitmore bringing batteries into her daughter's apartment at the Emma Sansom housing project and that, when she returned to the apartment later that night, the batteries were in a pantry closet and Weaver and others were sitting around a table, dividing up some money. (R. 143-47.) She also testified that several days later, Weaver, looking for Edwards's daughter, entered Edwards's home with money in his hand and said, "Well, tell the bitch I got the Goddamn money that she wanted, even if I had to knock some old man in the head at the Battery Mart." (R. 149.) Edwards testified that, after that day, Henry Gene Whitmore tried to sell her and her neighbors the batteries she had earlier seen at the apartment. Edwards said Whitmore had the batteries in the back of his car, and that she had also seen a white T-shirt with blood on it wrapped around a crowbar in the back of the car. (R. 150-51.)
The weight and credibility of corroborating evidence is a question for the jury. King v. State, 356 So.2d 1216 (Ala.Cr.App. 1977). Because this was a question for the jury, we cannot say the trial court erred in denying Weaver's motion to dismiss.
In reviewing the record, we come to the same conclusion in regard to the corroborative evidence that we reached in our review of Weaver's first conviction:
 "Clearly, the testimony of Faye Edwards tends to connect [Weaver] with the capital murder of the victim. She saw [Weaver] on the night of this offense carrying batteries and counting money. [Weaver] told her two days later that he had to `knock the old man in the head' to get money. We find Edwards's testimony was sufficient corroboration of Whitmore's testimony."
Weaver v. State, 678 So.2d 260, 274 (Ala.Cr.App. 1995), rev'd on other grounds, 678 So.2d 284 (Ala. 1996).
 III.
Weaver argues that, during its closing instructions, the trial court did not sufficiently instruct the jury on the concept of the presumption of innocence. The record reflects that, on December 15, 1997, at the beginning of the trial, the trial court instructed the jury:
 "In every case under Alabama law when there has been a plea of not guilty, there is a presumption of innocence that goes with the defendant throughout the trial all the way right into your deliberations, unless you are satisfied beyond a reasonable doubt and to a moral certainty of guilt. There is no duty on the part of *Page 977 
the defendant to present any evidence in his behalf in a case. The burden is entirely on the State to prove this case to you beyond a reasonable doubt and to a moral certainty and the defendant is presumed innocent unless you find otherwise after hearing all the evidence. I want you to keep that in mind."
(R. 61.) During the closing instructions on December 17, 1997, the trial court gave the following instruction on the presumption of innocence:
 "To those four counts the defendant has [pleaded] not guilty and that brings forth the presumption of innocence on the part of the defendant that goes with him throughout the course of the trial, unless you are satisfied beyond a reasonable doubt, as I said earlier."
The State argues that this issue was not preserved for appellate review because no specific objection was made at trial. Weaver insists the objection he made was sufficiently specific. The following objection was made after the closing instructions:
 "MR. BUTTRAM [defense counsel]: . . . [T]here was no instruction on the presumption of innocence. You did not —
"THE COURT: — Yes, I did. I sure did.
"MR. BUTTRAM: No, sir, you described —
 "THE COURT: — I did, too. I did it at the beginning of the trial and did it at the end of the trial.
 "MR. HART [defense counsel]: Okay. This is something else."
(R. 326.)
The State is correct in its argument that the objection made at trial was that no presumption-of-innocence instruction was given and that the issue now raised on appeal is whether the instruction that was given was sufficient. We also note that, at trial, it appears that defense counsel retracted their objection to the presumption-of-innocence instruction and moved on to another unrelated objection and argument. Given the state of the record, we hold that this issue was not preserved for appellate review and is therefore procedurally barred. There is no adverse ruling on this issue for this Court to review on appeal. Williams v. State,51 Ala. App. 1, 7, 282 So.2d 349, 355 (Ala.Cr.App.), cert. denied,291 Ala. 803, 282 So.2d 355 (Ala. 1973); Spradley v. State, 414 So.2d 170,172 (Ala.Cr.App. 1993).
Even if this issue had been preserved for review, it would not have any merit. In reviewing the two instructions given to the jury on the presumption of innocence, we believe that the instructions were sufficient.
 IV.
Weaver argues that the trial court erred in not granting a request by the defense to poll the jury after it returned its verdict, in order to see if the jurors had "read anything in the newspaper or heard anything on the radio about this case during this trial." (R. 350.) Weaver did not specifically allege that any juror had been exposed to any reports in the media about the case.
The record reflects that the trial judge repeatedly instructed the jury to avoid news reports about the case, and to report it to the court if any members were exposed to any news reports. The record does not indicate that any juror ever reported seeing a news report about the case.
"In the absence of any allegation that any juror actually read [newspaper articles about the case], we find no error in the judge's failure to poll the jury to determine whether or not any juror may have read [newspaper articles.]" Thomas v. State, 473 So.2d 627, 631
(Ala.Cr.App. 1985). The trial court did not abuse its discretion in refusing to poll the jury after the verdict to see if any juror had read newspaper articles or had heard news reports on the radio about this case. *Page 978 
 V.
Weaver next argues he was denied his constitutional right to a speedy trial. The record reflects that the first conviction in this case was reversed and the case remanded to the trial court on May 10, 1996, and that the second trial began on December 8, 1997, 19 months later. Although Weaver asks this court, in determining the speedy-trial issue, to count the 24 months it took to bring him to trial the first time, it is well settled that, for the purpose of determining whether a defendant has been denied a speedy trial in a retrial, the time period is measured from "the action occasioning the retrial." Nickerson v. State,629 So.2d 60, 62-63 (Ala.Cr.App. 1993). Thus, this court is concerned only with the 19-month delay it took to bring Weaver to trial after the case was remanded to the circuit court for retrial.
 "In order to determine whether an accused's constitutional right to a speedy trial has been violated, this court must look at the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) any prejudice to the defendant resulting from the delay. Barker v. Wingo, 407 U.S. 514
(1972)."
State v. Woods, 600 So.2d 425, 427 (Ala.Cr.App. 1992). The delay must be presumptively prejudicial before inquiry is made into the remaining factors. Whether a delay is presumptively prejudicial requires case-by-case determination. Payne v. State, 683 So.2d 440, 451
(Ala.Cr.App. 1995).
We conclude that the 19-month delay here was not presumptively prejudicial. Barker requires that, in determining whether a delay is presumptively prejudicial, we examine the conduct of the defense and the prosecution. Barker v. Wingo, 407 U.S. at 530. In reviewing the record, we find that the trial court inquired of both the prosecution and defense counsel after the case was returned in May 1996, and neither side appeared interested in an immediate retrial:
 "THE COURT: . . . [I] can't speculate since I don't see anything in the record where anybody asked for a trial until the State did back a few months ago. As I said, I was ready to try this case as soon as it came back and informally I inquired of counsel and the D.A.'s office when they wanted to try it, and, as I said, nobody jumped over any fences wanting to set this case down. . . . [I] presumed there was some reason why you didn't want to come to trial. I didn't know whether it was because of something the defense wanted to do or prepare or whether it was something the State had to do or prepare. You know, I can't speculate on that. All I can say is nobody asked for it to be set for trial until a few months ago, and when they did, I set it."
(R. 19-20.) The trial judge's perception that neither side was interested in an immediate retrial is supported by the lack of any action by either side until the State's July 10, 1997, request that a trial date be set. The only action, other than a motion by defense counsel requesting payment for extraordinary expenses, was a motion for a bail hearing, filed in December, 1996, which was later indefinitely continued at Weaver's request. (C. 6.)
Even though we have concluded that the delay was not presumptively prejudicial, we have reviewed the remaining factors and find no violation of Weaver's right to a speedy trial. Weaver made no request that a trial date be set, although in his motion to dismiss the indictment he attempted to rely on a speedy-trial request made before his first trial. However, an unqualified reversal of the first trial put Weaver in the same position as if the case had never been tried, and he could not sit mute and rely on a speedy-trial request made in a previous trial. Nettles v. State, 731 So.2d 626 (Ala.Cr.App. 1998). As to the prejudice to Weaver resulting from the delay, Weaver never alleged any prejudice *Page 979 
at trial, but merely relied on the length of time it took to bring him to trial the second time. Before this court, Weaver has alleged that the delay from the offense and the retrial "made it nearly impossible for Defendant to prove his whereabouts at the time of this crime and to investigate the veracity of the many conflicting witness statements given to police." However, Weaver does not state how the delay had such an impact on preparation for his second trial, and the record does not reflect any lack of preparation caused by the passage of time.
 VI.
Weaver argues that because he did not choose to testify at trial, the trial court erred in not giving an instruction to the jury regarding his right to remain silent, and that no inference could be drawn from his silence. The State argues that the issue was not preserved for appellate review because Weaver was not specific in his objection to the lack of such an instruction. The record reflects that Weaver did not request such an instruction be given to the jury during the closing instructions, but after the instructions had been given, the following conversation between counsel and the trial court occurred:
 "MR. BUTTRAM [defense counsel]: What about . . . his right to remain silent and not testify and to have that not used against him? You didn't given any instruction on that?
 "THE COURT: Well, it is not mandatory to give anything on that. It hasn't been raised as an issue.
 "MR. BUTTRAM: Well, he didn't testify. I don't think that —
 "THE COURT: — Well, you went through that in voir dire. It is too late now.
 "MR. BUTTRAM: I don't think it's too late. We object to it.
"THE COURT: Okay. Anything further?"
(R. 326-27.)
The law is well settled that, when there has been a request for a "no-adverse-inference" charge, it is reversible error for the trial court to refuse such a request. In 1979, the Alabama Supreme Court noted:
 "[W]e observe that it has long been the law of this State that the constitutional guarantee against self-incrimination (Art. [I], § 6, Alabama Constitution 1901), as augmented by [Alabama Code 1975, § 12-21-220], renders the refusal of a requested jury instruction on the legal effect of an accused's exercise of that right reversible error."
Perry v. State, 368 So.2d 310, 312 (Ala. 1979).
The question in this case, is whether the dialogue quoted above between the trial court and trial counsel amounted to a request for the jury charge. We hold that it does not and thus that there was no request for a "no-adverse-inference" charge.
Section 12-16-13, Ala. Code 1975, states, in part:
 "Charges moved for by either party must be in writing and must be given or refused in the terms in which they are written. . ."
This requirement that jury instructions be in writing comports with Rule 21.2, Ala.R.Crim.P., which states that counsel should file "written requests that the court instruct the jury on the law as set forth in those requests." However, the Alabama appellate courts have often found an oral request for a jury charge to be sufficient, holding that to require a written instruction, when there has been a specific objection to the lack of a requested instruction made and when the judge was clearly put on notice of the requested charge, would be to elevate form over substance. Ex parte McCall, 594 So.2d 628, 631 (Ala. 1991). In this case, there was no such request, either written or oral, for a "no- *Page 980 
adverse-inference" charge before the trial court's charges to the jury. And the absence of such a request should not necessarily have surprised the trial court. Many trial counsel make the strategic decision to not request such an instruction, because they believe it unduly directs the jury's attention to the fact that the defendant chose not to testify. That is why the trial court's remarks that such an instruction was not mandatory was a correct statement of the law, at the time he made it. Without a request for the instruction, he was under no obligation to give such an instruction. See Phillips v. State,726 So.2d 292, 294 (Ala.Cr.App. 1998).
Weaver now argues that his post-charge dialogue with the trial court amounted to a request for the "no-adverse-inference" instruction. After carefully reviewing the record, we cannot agree. It is trial counsel's responsibility to request the instructions trial counsel believes should be given to the jury. Rule 21.1, Ala.R.Crim.P. In this case, the dialogue between trial counsel and the trial court seems to be an argument over whether the trial court's comment that the "no-adverse-inference" instruction was not mandatory was a correct statement of the law. We decline to interpret trial counsel's remark, "I don't think it's too late," as an oral request for the jury instruction. Trial counsel never made a clear request for the "no-adverse-inference" instruction.
Even if the trial court could have interpreted trial counsel's remarks as a request for a specific jury instruction, we hold that trial counsel's general "We object to it" comment, and the lack of any adverse ruling by the trial court, failed to preserve this issue for appellate review. Rule 21.2, Ala.R.Crim.P.; Moody v. State, 615 So.2d 126, 128-29
(Ala.Cr.App. 1993); Davenport v. State, 653 So.2d 1006, 1008 (Ala.Cr.App. 1994).
 VII.
Weaver contends he should have been convicted of only one count of felony murder, making the following argument:
 "The trial court committed reversible error by not setting aside one (1) of the felony murder charges, and its lesser included offenses, in this case. There is no dispute that there was only one (1) murder in this case. To impose sentences upon a person for two (2) felony murder convictions for one (1) murder violates the proscription in the Constitution of Alabama of 1901, Article 1, Section 9, against building a series of criminal charges for a single act. It also violates the prohibition contained in the Fifth Amendment of the Constitution of the United States against a citizen's being twice punished for one (1) crime. Vogel v. State, 426 So.2d 863 (Ala.Cr.App. 1980), aff'd, 426 So.2d 882 (Ala.), cert. denied, 462 U.S. 1107 (1983). The same prohibitions apply to the lesser included offenses as well, as they are necessary elements of the crime of felony murder."
"When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense." § 13A-1-8(b), Ala. Code 1975. Of course, the test for whether the same conduct does indeed establish the commission of more than one offense is well settled:
 "`The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717
(1969).
"`. . . .
 "`The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in Blockburger v. United States, 284 U.S. 299, 304
(1932): *Page 981 
 "`"The applicable run is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . ."
 "`This test emphasizes the elements of the two crimes. "If each requires proof that the other does not, the Blockburger test would be satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . ." Iannelli v. United States, 420 U.S. 770, 785 n. 17 (1975).'"
Clift v. State, 352 So.2d 838, 839 (Ala. 1977), quoting Brown v. Ohio, 432 U.S. 161, 165-66 (1977).
In this case, Weaver was charged with the capital offenses of murder committed during a burglary and murder committed during a robbery. The jury found him guilty of the lesser offenses included within those capital offenses of felony murder committed during a burglary and felony murder committed during a robbery. In applying the Blockburger test, we find, as we have before, that murder during a robbery is not a lesser included offense of murder during a burglary, because each offense required proof of a statutory element that the other did not. Therefore, Weaver was properly indicted for the separate counts of capital murder and was properly convicted and sentenced for the lesser included offenses of felony murder committed during a robbery and felony murder committed during a burglary. Powell v. State, 631 So.2d 289, 292 (Ala.Cr.App. 1993).
However, when applying the Blockburger test to the lesser included offenses of first-degree robbery, second-degree burglary, and second-degree theft, we can discern no element that was required to be proven that was not also a part of the felony murder counts.
The pertinent elements of felony murder, as set out in § 13A-6-2, Ala. Code 1975, are as follows:
"(a) A person commits the crime of [felony] murder if:
". . . .
 "(3) He commits or attempts to commit . . . burglary in the first or second degree [or] robbery in any degree . . . and, in the course of and in furtherance of the crime he is committing or attempting to commit, or in the immediate flight therefrom, he, or another participant if there be any, causes the death of any person."
It is clear from the instructions the trial court gave to the jury that the elements of first-degree robbery, second-degree burglary, and second-degree theft were included within the offenses of felony murder. If fact, the trial court cautioned the jury to consider those lesser included offenses only after it had rejected the greater offenses:
 "[THE COURT:] . . . If after you have considered all the evidence in the case you find that the elements are not there under capital murder or felony murder, but you find that there are elements present for robbery in the first degree or burglary in the second degree, then you could find either one or both of those as lesser included offenses."
(R. 310.) (emphasis added.)
 ". . . The last lesser included offense is theft, as I mentioned earlier, and I mentioned to you that theft is involved with robbery and burglary in the capital charge and it is involved with robbery and burglary in the felony murder charge. In addition, it can be a lesser included offense. If those elements are not present for those other charges but you find beyond a reasonable doubt and to a moral certainty that the defendant committed a theft, then it is necessary for you to understand what the elements of theft are. . . ." *Page 982 
(R. 313.) (emphasis added.) The trial court's jury instructions were correct. Section 13A-1-8(b)(1), Ala. Code 1975, cautions that a defendant may not be prosecuted for more than one offense arising out of the same conduct when one offense is included in the other, as defined in § 13A-1-9. Section 13A-1-9, Ala. Code 1975, defines an offense as an included one "if it is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged."
 "For purposes of former jeopardy, the felony which provides the component necessary to elevate an intentional killing to capital murder is a lesser included offense of the capital crime. Section 13A-5-41; J. Colquitt, The Death Penalty Laws of Alabama, 33 Ala.L.Rev. 213, 254 (1982) (`In the ordinary case, lesser included offenses will include some or all lesser degrees of homicide and the lesser degrees of crimes within the definition of the aggravating component. Additionally, lesser included offenses may themselves include lesser offenses supported by the evidence.'); E. Carnes, Alabama's 1981 Capital Punishment Statute, 12 Alabama Lawyer 456, 472 (1981). See also Sekou v. Blackburn, 796 F.2d 108, 110 (5th Cir. 1986) (`The Double Jeopardy Clause prohibits prosecution and conviction for both felony murder and the enumerated felony. . . . The underlying felony is considered a lesser included offense of felony murder and thus the "same offense" for double jeopardy purposes.'). Therefore, robbery is a lesser included offense of the capital offense of the capital offense involving murder-robbery."
Connolly v. State, 539 So.2d 436, 441 (Ala.Cr.App. 1988).
Using the Connolly analysis, we believe that both robbery and burglary, under the circumstances of this case, are lesser included offenses of the two felony-murder counts. Because theft is a lesser included offense of the crime of robbery, it, too, must be a lesser included offense of the felony-murder counts. Ramsey v. State, 441 So.2d 1065, 1067 (Ala.Cr.App. 1983).
Accordingly, this cause is remanded for the trial court to vacate Weaver's convictions and sentences for first-degree robbery, second-degree burglary, and second-degree theft. However, Weaver's convictions for the felony-murder offenses were proper and, therefore, they are both affirmed. Coral v. State, 628 So.2d 954, 958 (Ala.Cr.App. 1992), aff'd, 628 So.2d 1004 (Ala. 1993), cert. denied, 511 U.S. 1012
(1994).
On this remand, the trial court shall vacate the appellant's convictions and sentences for first-degree robbery, second-degree burglary, and second-degree theft. The trial court shall take all action in sufficient time to permit the circuit clerk to make a proper return to this court at the earliest possible time within 45 days of the release of this opinion.
REMANDED WITH DIRECTIONS.
Long, P.J., and McMillan, Brown, and Baschab, JJ., concur.
[1] The pertinent part of § 12-17-186, Ala. Code 1975, reads as follows:
 "Appointment of attorney to act for district attorney when office vacant, district attorney disqualified, etc.
 "(a) The presiding judge of the circuit court, the district court or the municipal court, when the district attorney or assistant district attorney regularly required by law to prosecute criminal cases in such court is absent or connected with the party against whom it is his duty to appear by consanguinity or affinity within the fourth degree, or when there is a vacancy in the office from any cause, or when the district attorney refuses to act, may appoint a competent attorney to act in such district attorney's place, but such appointment shall in no event extend beyond the session of the court at which the appointment is made."
[2] § 12-17-198, Ala. Code 1975, reads, in pertinent part:
 "Appointment, number and compensation of assistant district attorneys.
 "(a) The district attorney may appoint full-time or part-time assistant district attorneys to perform prosecutorial duties in the district or circuit courts within the circuit for which the district attorney shall have administrative responsibility. The number and compensation of such assistant district attorneys shall be as otherwise authorized or provided by law."