The appellant, Everett Clancy, was indicted for capital murder in connection with the shooting deaths of Curtis Jones and Jarrod Craig. See § 13A-5-40(a)(10), Ala. Code 1975 (making the murder of two or more persons by one act or pursuant to one scheme or course of conduct a capital offense). The jury returned a verdict finding Clancy guilty of manslaughter for the killing of Curtis Jones, as a lesser-included offense to the charged offense of capital murder. See § 13A-6-3, Ala. Code 1975.[1] The trial court sentenced Clancy to 15 years' imprisonment. The sentence was split, and Clancy was ordered to serve three years in prison. This appeal followed.
 I.
Clancy contends that the prosecution against him for these killings was *Page 168 
barred on double-jeopardy grounds. (Issues I and II in Clancy's brief.)
Clancy's conviction was the result of a second trial, conducted in April 2001. His first trial was conducted in August 1999 and ended after the State, near the conclusion of the defense's case, moved for and was granted a mistrial. In granting the mistrial, the trial court agreed with the State that the court had earlier improperly allowed several defense witnesses, over the State's objections, to give inadmissible hearsay testimony regarding unrelated specific bad acts of the victims. The mistrial was declared over Clancy's objection.
After the mistrial, Clancy's case was set for retrial. On September 8, 1999, Clancy filed a motion to dismiss the indictment, arguing that a retrial was barred on double-jeopardy grounds. Specifically, Clancy contended that jeopardy had attached during his first trial and that no "manifest necessity" had existed to warrant the trial court's declaration of a mistrial and that, consequently, he could not be retried without violating the protection against double jeopardy. Clancy further contended that the State's motion for a mistrial — made the day after the improper evidence at issue was received — was untimely and that the trial court, instead of declaring a mistrial, should have polled the jury to determine the prejudicial effect of the improperly admitted evidence, if any, and issued curative instructions to alleviate any prejudice. On September 29, 1999, a hearing was held on Clancy's motion to dismiss. However, the trial court's ruling on that motion remained pending for the next 18 months, during which time Clancy's case was continued numerous times.
On March 23, 2001, the day for argument on motions pending in Clancy's case, Clancy filed another motion to dismiss; in that motion, Clancy reasserted the double-jeopardy arguments he had made in support of the still-pending motion to dismiss filed in September 1999.[2] On April 5, 2001, the trial court entered an order, finding as follows:
 "This matter came before the Court on defendant's Motion to Dismiss. After oral argument and careful consideration, the Court finds that due to the receipt of inadmissible evidence, the mistrial declared August 27, 1999, was proper.
 "Therefore, it is the Order of the Court that defendant's Motion to Dismiss is hereby Denied."
(C. 83.)
We point out that jeopardy attached in this case when the jury was empaneled and sworn during Clancy's first trial. See, e.g.,Ex parte Sullivan, 779 So.2d 1157, 1162 (Ala. 2000); Ex parteMcKenna, 655 So.2d 989, 990 (Ala. 1995). Where, as here, a mistrial terminates a trial over the objection of the defendant, a retrial of the defendant is barred unless it is shown that the initial proceeding was aborted because of a "manifest necessity."Ex parte Sullivan, 779 So.2d at 1162; see Oregon v. Kennedy,456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). "`[T]he "manifest necessity" standard provides sufficient protection to the defendant's interests in having his case finally decided by the jury first selected while at the same time maintaining "the public's interest in fair trials designed to end in just judgments.'" Ex parte Sullivan, 779 So.2d at 1162 (quotingKennedy, 456 U.S. at 672, 102 S.Ct. 2083, quoting in turn Wadev. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974
(1949)). *Page 169 
"The trial court's ruling as to whether there was a manifest necessity for granting a mistrial should always be afforded great deference." Ex parte Sullivan, 779 So.2d at 1162, citing Exparte McCall, 541 So.2d 1075, 1076 (Ala. 1989). See also, e.g.,Woods v. State, 367 So.2d 982, 983-84 (Ala. 1978). "This [deference afforded to the trial court] is because the trial judge `heard what transpired and has seen the scenario unfold. He is in a far better position to determine whether a jury should be discharged and a mistrial granted.' Duncan v. City ofBirmingham, 384 So.2d 1232, 1240 (Ala.Cr.App. 1980)." Boyd v.State, 590 So.2d 344, 348 (Ala.Crim.App. 1989) (quotingWadsworth v. State, 439 So.2d 790, 792 (Ala.Crim.App. 1983)).
Here, it is clear that the trial court declared the mistrial because the defense presented inadmissible evidence and that evidence had a bearing on the issues of fundamental fairness to both the State and the defendant. Cf. Dulaney v. State,410 So.2d 122, 125 (Ala. 1981) (there is no constitutional requirement that the trial court's finding of manifest necessity be explicit). Clancy argued at both his trials that he shot the victims in self-defense. At his first trial, during the defense's presentation of its case, four consecutive defense witnesses were allowed, over the objections of the prosecutor, to give hearsay testimony regarding unrelated specific bad acts of the victims. In that testimony, the witnesses indicated that they had "heard," among other things, that Curtis Jones had "shot somebody before"; that Jones had been involved in instances of "shooting people and things like that"; that Jones and Craig had shot at one of the witnesses' son "32 times" and had struck him in the leg with one of the shots; that Jones had once tied up someone and allowed pit bulldogs to attack that person; that Craig had once shot someone in the hand for taking a car; that Jones had once threatened to rape one of the witnesses' cousins; that Jones had "shot a couple of people in the past"; and that Jones had shot someone in the leg in a drug-related incident.
Although Rule 405(b), Ala. R. Evid., authorizes the admission of testimony concerning specific instances of a victim's violent conduct in a case where the victim's violent character is essential to a defendant's claim of self-defense, nothing in that rule or in any other Alabama Rule of Evidence or in Alabama caselaw authorizes a defendant claiming self-defense to introducehearsay testimony concerning alleged specific instances of the victim's violent conduct in order to bolster his self-defense theory. The testimony in question here was clearly hearsay, in that it was offered for the truth of the matter asserted. What is more, Clancy's counsel made no attempt to link the hearsay evidence to Clancy's self-defense claim by, for instance, establishing that the acts of violence by the victims testified to were within Clancy's knowledge or that Clancy had heard of such acts of violence, whether or not they had in fact occurred. That is, there was no attempt to show how the specific instances of the victims' conduct might have affected Clancy's state of mind as he purportedly acted in self-defense. Thus, the evidence was also irrelevant.
Elsewhere in presenting his defense, Clancy was allowed, properly, to present evidence of previous run-ins between him and the victims, as well as testimony that, at the time of the shootings, the victims were armed and appeared to be on the verge of attacking Clancy. In addition, the four character witnesses offered by Clancy were allowed, properly, to testify concerning Jones's and Craig's general reputations for violence and concerning their opinions that Jones and Craig were violent. See Rules 404(a)(2)(A) and 405(a), *Page 170 
Ala. R. Evid. However, as the State asserts, the improperly admitted hearsay testimony regarding the numerous unrelated bad acts of Jones and Craig was used by Clancy to paint the two as "bad men" who "deserved" to be killed. (State's brief at p. 15.)
Affording the trial court the deference that is due under such circumstances, we do not find that it abused its discretion in determining that the trial process had been tainted by the admission of the improper evidence and that there was a manifest necessity for granting a mistrial. The trial court was also in the best position to assess whether the effect of the admission of the improper evidence could be rectified by curative instructions. We cannot say the trial court erred in determining that the bell could not be "unrung" by instructing the jury to disregard what it had heard about the victims.
 "The Supreme Court [has] cautioned that the phrase `manifest necessity' cannot be interpreted literally; only a `high degree' of necessity is required before concluding that a mistrial is appropriate. Arizona v. Washington, 434 U.S. [497,] at 506, 98 S.Ct. [824,] at 831 [(1978)]. `Manifest necessity for a mistrial is not determined by whether in fact the event precipitating the mistrial did influence the juror, but whether it might have unlawfully influenced the juror.' Woods v. State, 367 So.2d 982, 984 (Ala. 1978)."
Cox v. State, 585 So.2d 182, 196 (Ala.Crim.App. 1991).
Clancy argues that the granting of the mistrial was improper — and was thus not a manifest necessity — because the State's motion for a mistrial was untimely. We reject Clancy's argument for several reasons. First, the record reflects that the prosecutor strenuously objected to defense counsel's attempts to introduce the hearsay testimony of the four witnesses regarding the unrelated specific bad acts of Jones and Craig. The trial court, however, overruled the prosecutor's objections and allowed the testimony. Under the circumstances, where his objections had been overruled, the prosecutor could be excused for not immediately asking for the more drastic remedy of a mistrial. Further, the prosecutor objected to the improper testimony of each witness, as each witness was testifying; the full deleterious effect of the improperly admitted evidence did not accrue until all four witnesses had been allowed to testify. The record reflects that, following the hearsay testimony, the jury was recessed for the day without the defense having rested its case. The following morning, before any further testimony was taken, the prosecutor moved for the mistrial based on the admission of the improper testimony. After a recess, the trial court returned and made its ruling that it had erred in allowing the testimony, that consequently the parties could not receive a fair trial, and that a mistrial should be granted.
We cannot let our assessment of the correctness of the trial court's ruling hinge, as Clancy urges, on the timing of the State's motion for a mistrial, since there is no question that the trial court had the authority sua sponte, even without the prompting of the State's motion, to declare a mistrial. Indeed, if the trial court had reconsidered the propriety of its evidentiary rulings from the previous day and had then declared the mistrial sua sponte in the absence of a mistrial motion from the State, our principal concern would be the correctness of the trial court's declaration of the mistrial — and we cannot say that a mistrial under those hypothetical circumstances would have amounted to an abuse of discretion. That the State did, in fact, object when the *Page 171 
improper evidence was offered and did move for a mistrial as soon as the proceedings were recommenced and before any further testimony was taken only bolsters our confidence in the correctness of the trial court's ultimate determination that a mistrial was warranted. The timing of the State's motion for a mistrial did not render the mistrial less manifestly necessary and does not undermine the correctness of the trial court's ruling declaring a mistrial.
Finally, we reject Clancy's argument that the trial court erred in refusing to grant Clancy permission to argue double jeopardy as a defense to the jury in his second trial. There were no factual issues in the trial court's declaration of a mistrial; the trial court's ruling in that regard involved only a question of law, which the trial court correctly decided. Where the issue presented by a double-jeopardy claim is a question of law only, the issue should not be submitted to a jury. Duncan v. City ofBirmingham, 384 So.2d 1232 (Ala.Crim.App. 1980); Billups v.City of Birmingham, 367 So.2d 518, 522-23 (Ala.Crim.App. 1978). See also Washington v. State, 818 So.2d 411, 418 (Ala.Crim.App. 2000); Spears v. State, 647 So.2d 15, 24 (Ala.Crim.App. 1994).
 II.
Clancy contends that his right to a speedy trial was violated.
On March 23, 2001, about two weeks before his second trial began, Clancy filed a motion to dismiss the indictment on speedy-trial grounds. It appears that this was Clancy's first assertion of his right to a speedy trial. From the record, it cannot be determined whether a hearing was held on the speedy-trial issue, and the record contains no express ruling by the trial court with regard to Clancy's motion. In any event, Clancy's second trial began on April 9, 2001.
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972), the United States Supreme Court set forth four factors to be weighed when assessing a speedy-trial claim. Those factors are (1) the length of the delay, (2) the reason for the delay, (3) the accused's assertion of his right to a speedy trial, and (4) the degree of prejudice suffered by the accused due to the delay. Barker, 407 U.S. at 531, 92 S.Ct. 2182; see also, e.g., Ex parte Carrell, 565 So.2d 104, 105 (Ala. 1990). Unless the delay is sufficiently lengthy to be "presumptively prejudicial," it is unnecessary to consider the remainingBarker factors. Barker, 407 U.S. at 530, 92 S.Ct. 2182; see also Zumbado v. State, 615 So.2d 1223, 1234 (Ala.Crim.App. 1993).
The mistrial was declared in Clancy's first trial on August 27, 1999. "[F]or the purpose of determining whether a defendant has been denied a speedy trial in a retrial, the time period is measured from `the action occasioning the retrial.' Nickerson v.State, 629 So.2d 60, 62-63 (Ala.Crim.App. 1993)." Weaver v.State, 763 So.2d 972, 978 (Ala.Crim.App. 1998). Clancy's second trial commenced on April 7, 2001. For purposes of our speedy-trial analysis, then, we consider the approximately 19 month delay between the mistrial and the second trial.
This court has found no presumptive prejudice in a number of cases involving delays the same or longer than the 19 months at issue here. See, e.g., Weaver, supra, 763 So.2d at 978 (19 months); Campbell v. State, 709 So.2d 1329, 1334 (Ala.Crim.App. 1997) (26 months); Arnett v. State, 551 So.2d 1158, 1159
(Ala.Crim.App. 1989) (20 months). On the other hand, we have found presumptive prejudice to exist in cases in which the delays were the same or shorter than 19 months. See, e.g., Ingram v.State, 629 So.2d 800, *Page 172 
802 (Ala.Crim.App. 1993) (19 months); Steeley v. City ofGadsden, 533 So.2d 671, 679-80 (Ala.Crim.App. 1988) (14 months);Beaver v. State, 455 So.2d 253, 255 (Ala.Crim.App. 1984) (16 months). Even though we cannot clearly conclude that the 19-month delay in Clancy's case was presumptively prejudicial, we will, in an abundance of caution, review the record in light of the remaining three Barker factors.
As previously noted, it appears that Clancy first asserted his speedy trial right in a motion to dismiss filed on March 23, 2001 — about two weeks before the start of his second trial. This fact weighs against Clancy in a Barker analysis. See State v.Anderson, 640 So.2d 1061, 1064 (Ala.Crim.App. 1994). "The fact that the appellant did not assert his right to a speedy trial sooner `tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date.'"Benefield v. State, 726 So.2d 286, 291 (Ala.Crim.App. 1997) (quoting Archer v. State, 643 So.2d 597, 599 (Ala.Crim.App. 1991), quoting in turn Lewis v. State, 469 So.2d 1291, 1294
(Ala.Crim.App. 1984)). The "failure to assert the right . . . make[s] it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532, 92 S.Ct. 2182.
In part because the record does not contain a transcript of a speedy-trial hearing (if one was even held), the precise reasons for the rescheduling of Clancy's second trial are not apparent. The record does indicate that the trial court set aside a second trial date in 1999 pending the court's ruling on Clancy's motion to dismiss the indictment on double-jeopardy grounds, which Clancy filed on September 8, 1999. Thereafter, four continuances were granted before Clancy's second trial was held. The record does not indicate that any delay in Clancy's retrial was attributable to actions by the State. We find the record neutral regarding the reason-for-delay factor.
Finally, Clancy has failed to show that he was prejudiced by the delay. In support of his motion to dismiss on speedy-trial grounds, Clancy asserted only that "the incident allegedly occurred on or about July 31, 1996, which is almost five (5) years ago . . . [and] to try the defendant on April 9, 2001, would violate his right to a speedy trial." (C. 81.) In his appellate brief, Clancy merely asserts that he "had a strong interest in getting the nightmare of the deaths of Curtis Jones and Jarrod Craig behind him." (Clancy's brief at p. 45.)
In Barker, the Supreme Court stated:
 "Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."
407 U.S. at 532, 92 S.Ct. 2182 (footnote omitted).
The record reflects that Clancy put on the same two eyewitnesses at both of his trials, and at both trials those eyewitnesses testified that Clancy shot the victims in self-defense. Clancy makes only bare assertions of prejudice and has not shown how his defense was impaired by the passage of time between his first and second trials.
Applying the Barker factors to the facts of this case, we are convinced that Clancy was not denied his right to a speedy trial. *Page 173 
 III.
Clancy contends that he was denied a fair trial because, he says, the prosecutor "consistently violated the rules of evidence." (Clancy's brief at p. 48.)
In his brief, Clancy points to an instance where the prosecutor asked a State's witness an allegedly leading question concerning the lighting conditions around the scene of the shooting. After the witness had testified that the area was "fairly well lit," the prosecutor asked the witness, "Would you characterize the lighting as well lit?" Clancy's counsel objected to the leading nature of the question, and the trial court overruled the objection. However, the prosecutor then asked the witness how he would characterize the lighting, to which the witness answered (again), "It was fairly well lit." (R. 143-44.) Thus, Clancy received the relief he sought by his objection to the allegedly leading question. See James v. State, 788 So.2d 185, 196
(Ala.Crim.App. 2000). We find no prejudice here.
Clancy also argues that the prosecutor, during cross-examination of a defense witness, was improperly allowed to develop a fact not in evidence. The record reflects that during direct examination by Clancy's counsel, the defense witness gave testimony implying that, based on the witness's observation of the victims' car stopped in the roadway, a confrontation between Clancy and the victims was brewing before the shooting. On cross-examination, the prosecutor asked the witness if he knew whether the victims had stopped in the roadway because they had a flat tire. The witness answered that he was unaware of that fact, and Clancy's counsel objected, arguing that no one had testified to the fact that there had been a flat tire. The objection was overruled.
Because it is permissible during cross-examination to asked leading questions in order to develop evidence, Clancy's argument here fails. Rule 611(c), Ala. R. Evid.; see Evans v. State,794 So.2d 415, 433-34 (Ala.Crim.App. 2000).
 IV.
Clancy contends that the trial court erred in instructing the jury on an accused's flight as evidence of consciousness of guilt. He argues that the evidence did not warrant a flight instruction. However, Clancy failed to object to the flight instruction at the trial level; consequently, his argument was not preserved for appellate review. Rule 21.3, Ala. R.Crim. P.; see Neal v. State, 803 So.2d 586, 588 (Ala.Crim.App. 2001).
Based on the foregoing, the trial court's judgment is affirmed.
AFFIRMED.
BASCHAB and SHAW, JJ., concur. COBB, J., dissents, with opinion, which WISE, J., joins.
[1] The jury could not agree upon a verdict as to the killing of Jarrod Craig, and the trial court declared a mistrial as to the charge involving Craig.
[2] In the March 23, 2001, motion, Clancy also moved to dismiss the indictment on the ground that his right to a speedy trial had been violated. See Part II of this opinion.