766 So.2d 143 (1999)
Ex parte Ray Anthony RICE, Jr.
(In re Ray Anthony Rice, Jr. v. State of Alabama).
1980846.
Supreme Court of Alabama.
November 5, 1999.
Rehearing Denied January 7, 2000.
*144 L. Dan Turberville, Birmingham, for petitioner.
Bill Pryor, atty. gen., and Jack W. Willis, asst. atty. gen., for respondent.
PER CURIAM.
Ray Anthony Rice, Jr., was indicted for the capital murder of Philip Andrew Taylor. The indictment alleged in one count that the murder was made capital because it occurred during the commission of a kidnapping in the first degree, see Ala. Code 1975, § 13A-5-40(a)(1); in another count the indictment alleged that the murder was made capital because it occurred during the commission of a robbery in the first degree, see § 13A-5-40(a)(2). Rice was ultimately convicted of two counts of *145 the lesser included offense of felony murder, as defined in § 13A-6-2(a)(3). The jury specifically found Rice guilty of a felony murder committed during a kidnapping and of a felony murder committed during a robbery.[1] The trial court, by separate entries on the case action summary, adjudged Rice guilty of two counts of felony murder and sentenced him to life in prison under each count. The court's sentencing order did not specify that the two sentences were to run concurrently; therefore, by operation of law, Rice's sentences were cumulative and to be served consecutively. See Rule 26.12, Ala. R.Crim.P.; McLemore v. State, 562 So.2d 639 (Ala.Crim.App.1989).
Rice appealed to the Court of Criminal Appeals. He argued to that court, among other things, that his conviction and sentence on two counts of felony murder violated his right under the Fifth Amendment to the United States Constitution not to be twice placed in jeopardy for the same offense. Rice specifically argued that the Double Jeopardy Clause barred the trial court from sentencing him twice for what he says was a single offensemurder. The State conceded in its response brief filed in the Court of Criminal Appeals that the two sentences constituted multiple punishments for a single offense, and it agreed that one of the convictions and its corresponding sentence were due to be set aside. However, after the State had filed that brief, and while Rice's appeal was pending, the Court of Criminal Appeals released its opinion in Weaver v. State, 763 So.2d 972 (Ala.Crim.App.1998). The court stated in Weaver:
"Weaver contends he should have been convicted of only one count of felony murder, making the following argument:
"`The trial court committed reversible error by not setting aside one (1) of the felony murder charges, and its lesser included offenses, in this case. There is no dispute that there was only one (1) murder in this case. To impose sentences upon a person for two (2) felony murder convictions for one (1) murder violates the proscription in the Constitution of Alabama of 1901, Article 1, Section 9, against building a series of criminal charges for a single act. It also violates the prohibition contained in the Fifth Amendment of the Constitution of the United States against a citizen's being twice punished for one (1) crime. Vogel v. State, 426 So.2d 863 (Ala.Cr. App.1980), aff'd, 426 So.2d 882 (Ala.), cert. denied, 462 U.S. 1107, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983). The same prohibitions apply to the lesser included offenses as well, as they are necessary elements of the crime of felony murder.'
"`When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.' § 13A-1-8(b), Ala.Code 1975. Of course, the test for whether the same conduct does indeed establish the commission of more than one offense is well settled:
"`"The Double Jeopardy Clause `protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
"`". . . .
"`"The established test for determining whether two offenses are sufficiently distinguishable to permit the *146 imposition of cumulative punishment was stated in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932):
"`"`The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not....'
"`"This test emphasizes the elements of the two crimes. `If each requires proof that the other does not, the Blockburger test would be satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes....' Iannelli v. United States, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975)."'
"Clift v. State, 352 So.2d 838, 839 (Ala. 1977), quoting Brown v. Ohio, 432 U.S. 161, 165-66, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).
"In this case, Weaver was charged with the capital offenses of murder committed during a burglary and murder committed during a robbery. The jury found him guilty of the lesser offenses included within those capital offenses of felony murder committed during a burglary and felony murder committed during a robbery. In applying the Blockburger test, we find, as we have before, that murder during a robbery is not a lesser included offense of murder during a burglary, because each offense required proof of a statutory element that the other did not. Therefore, Weaver was properly indicted for the separate counts of capital murder and was properly convicted and sentenced for the lesser included offenses of felony murder committed during a robbery and felony murder committed during a burglary. Powell v. State, 631 So.2d 289, 292 (Ala.Cr.App.1993)."
763 So.2d at 980-81. The Court of Criminal Appeals, relying on its opinion in Weaver, rejected Rice's double-jeopardy argument and affirmed both of his convictions and life sentences. We granted Rice's petition for certiorari review. For the following reasons, we reverse and remand.
The sole issue on this certiorari review is whether the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution barred the trial court from sentencing Rice more than once for his violation of § 13A-6-2(a)(3).[2]
The Double Jeopardy Clause, applicable to the States through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."[3] In *147 Brown v. Ohio, 432 U.S. 161, 165-66, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the United States Supreme Court succinctly summarized the protections afforded by the Double Jeopardy Clause:

"Because it was designed originally to embody the protection of the common-law pleas of former jeopardy, see United States v. Wilson, 420 U.S. 332, 339-340[, 95 S.Ct. 1013, 43 L.Ed.2d 232] (1975), the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial.

"The Double Jeopardy Clause `protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' North Carolina v. Pearce, 395 U.S. 711, 717[, 89 S.Ct. 2072, 23 L.Ed.2d 656] (1969) (footnotes omitted). Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. See Gore v. United States, 357 U.S. 386[, 78 S.Ct. 1280, 2 L.Ed.2d 1405] (1958); Bell v. United States, 349 U.S. 81[, 75 S.Ct. 620, 99 L.Ed. 905] (1955); Ex parte Lange, [85 U.S. (18 Wall.) 163, 21 L.Ed. 872] (1874). Where successive prosecutions are at stake, the guarantee serves `a constitutional policy of finality for the defendant's benefit.' United States v. Jorn, 400 U.S. 470, 479[, 91 S.Ct. 547, 27 L.Ed.2d 543] (1971) (plurality opinion). That policy protects the accused from attempts to relitigate the facts underlying a prior acquittal, see Ashe v. Swenson, 397 U.S. 436[, 90 S.Ct. 1189, 25 L.Ed.2d 469] (1970); cf. United States v. Martin Linen Supply Co., 430 U.S. 564[, 97 S.Ct. 1349, 51 L.Ed.2d 642] (1977), and from attempts to secure additional punishment after a prior conviction and sentence, see Green v. United States, 355 U.S. 184, 187-188[, 78 S.Ct. 221, 2 L.Ed.2d 199] (1957); cf. North Carolina v. Pearce, supra.
"The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in Blockburger v. United States, 284 U.S. 299, 304[, 52 S.Ct. 180, 76 L.Ed. 306] (1932):
"`The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional *148 fact which the other does not....'
This test emphasizes the elements of the two crimes. `If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes....' Iannelli v. United States, 420 U.S. 770, 785 n. 17[, 95 S.Ct. 1284, 43 L.Ed.2d 616] (1975).
"If two offenses are the same under this test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions. See In re Nielsen, 131 U.S. 176, 187-188[, 9 S.Ct. 672, 33 L.Ed. 118] (1889); cf. Gavieres v. United States, 220 U.S. 338[, 31 S.Ct. 421, 55 L.Ed. 489] (1911). Where the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings. Unless `each statute requires proof of an additional fact which the other does not,' Morey v. Commonwealth, 108 Mass. 433, 434 (1871), the Double Jeopardy Clause prohibits successive prosecutions as well as cumulative punishment."
(Emphasis added; footnotes omitted.)
As this quote from Brown indicates, the Double Jeopardy Clause, as a general rule, prohibits the State from subjecting a defendant to multiple punishments for the same offense. This is the third guarantee discussed in Brown and it is the one with which we are concerned in this case. However, this protection for criminal defendants constrains only the judiciary to act in accordance with the expressed will of the legislature; it does not prohibit the legislature from authorizing the imposition of cumulative sentences for what amounts to the same offense, provided the legislative intent to do so is clear and the prosecutions and convictions occur in a single trial. The Supreme Court made this clear in Missouri v. Hunter, 459 U.S. 359, 365-68, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983):
"The Double Jeopardy Clause is cast explicitly in terms of being `twice put in jeopardy.' We have consistently interpreted it'"to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."' Burks v. United States, 437 U.S. 1, 11[, 98 S.Ct. 2141, 57 L.Ed.2d 1] (1978), quoting Green v. United States, 355 U.S. 184, 187[, 78 S.Ct. 221, 2 L.Ed.2d 199] (1957). Because respondent has been subjected to only one trial, it is not contended that his right to be free from multiple trials for the same offense has been violated. Rather, the Missouri court vacated respondent's conviction for armed criminal action because of the statements of this Court that the Double Jeopardy Clause also `protects against multiple punishments for the same offense.' North Carolina v. Pearce, 395 U.S. 711, 717[, 89 S.Ct. 2072, 23 L.Ed.2d 656] (1969). Particularly in light of recent precedents of this Court, it is clear that the Missouri Supreme Court has misperceived the nature of the Double Jeopardy Clause's protection against multiple punishments. With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.
"In Whalen v. United States, [445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)], we addressed the question whether cumulative punishments for the offenses of rape and of killing the same victim in the perpetration of the crime of rape was contrary to federal statutory and constitutional law. A divided Court relied on Blockburger v. United States, 284 U.S. 299[, 52 S.Ct. 180, 76 L.Ed. 306] (1932), in holding that the two statutes in controversy proscribed the `same' offense. The opinion in Blockburger stated:

*149 "`The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' Id., at 304[, 52 S.Ct. 180].
"In Whalen we also noted that Blockburger established a rule of statutory construction in these terms:
"`The assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent.' 445 U.S., at 691-692[, 100 S.Ct. 1432] (emphasis added).
We went on to emphasize the qualification on that rule:
"`[W]here the offenses are the same... cumulative sentences are not permitted, unless elsewhere specially authorized by Congress.' Id., at 693[, 100 S.Ct. 1432] (emphasis added).
"It is clear, therefore, that the result in Whalen turned on the fact that the Court saw no `clear indication of contrary legislative intent.' Accordingly, under the rule of statutory construction, we held that cumulative punishment could not be imposed under the two statutes.
"In Albernaz v. United States, 450 U.S. 333[, 101 S.Ct. 1137, 67 L.Ed.2d 275] (1981), we addressed the issue whether a defendant could be cumulatively punished in a single trial for conspiracy to import marihuana and conspiracy to distribute marihuana. There, in contrast to Whalen, we concluded that the two statutes did not proscribe the `same' offense in the sense that `"each provision requires proof of a fact [that] the other does not."' 450 U.S., at 339[, 101 S.Ct. 1137], quoting Blockburger, supra, [284 U.S.,] at 304[, 52 S.Ct. 180]. We might well have stopped at that point and upheld the petitioners' cumulative punishments under the challenged statutes since cumulative punishment can presumptively be assessed after conviction for two offenses that are not the `same' under Blockburger. See, e.g., American Tobacco Co. v. United States, 328 U.S. 781[, 66 S.Ct. 1125, 90 L.Ed. 1575] (1946). However, we went on to state that because
"`[t]he Blockburger test is a "rule of statutory construction," and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.' Albernaz v. United States, 450 U.S., at 340[, 101 S.Ct. 1137] (emphasis added).
We found `[n]othing ... in the legislative history which ... discloses an intent contrary to the presumption which should be accorded to these statutes after application of the Blockburger test.' Ibid. We concluded our discussion of the impact of clear legislative intent on the Whalen rule of statutory construction with this language:
"`[T]he question of what punishments are constitutionally permissible is no different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.' 450 U.S., at 344[, 101 S.Ct. 1137] (emphasis added) (footnote omitted)."
See, also, Ohio v. Johnson, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).
Thus, the Supreme Court has cleared the way for a State legislature to authorize the imposition of multiple sentences for the commission of statutorily separate offenses that must be taken as the same *150 offense under the Blockburger test, provided it clearly expresses its intent to do so. Logically, then, a State legislature would not violate the Double Jeopardy Clause by imposing multiple sentences for the commission of a single statutory offense, provided it clearly expresses its intent to do so. For example, a State legislature could provide for two or more different methods by which an offense stated in a single statute may be committed and, consistent with the protections afforded by the Double Jeopardy Clause, authorize the imposition of separate sentences corresponding to each method by which the offense was committed.
Rice contends that § 13A-6-2(a)(3) provides for several different methods of committing a single offensemurder. According to Rice, the Blockburger test, which the Court of Criminal Appeals applied in Weaver and on which the State exclusively relies, is not applicable because, he says, § 13A-6-2(a)(3) defines a single offense. We agree.
Section 13A-6-2 provides in part:
"(a) A person commits the crime of murder if:
". . . .
"(3) He commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree or any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person."
(Emphasis added.) Murder is a class A felony, § 13A-6-2(c), and is punishable by a term of imprisonment for "life or not more than 99 years or less than 10 years," see § 13A-5-2(f) and § 13A-5-6(a)(1), and by a fine of not more than $20,000, see § 13A-5-2(b); § 13A-5-11(a)(1). The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Ex parte State Dep't of Revenue, 683 So.2d 980, 983 (Ala.1996). This Court has explained:
"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992); see, also, Johnson v. Price, 743 So.2d 436 (Ala. 1999).
The language used by the Alabama Legislature in § 13A-6-2(a)(3) is clear and unambiguous. Section 13A-6-2(a)(3) defines one criminal offensemurder. A "murder," within the definition of § 13A-6-2(a)(3), may be committed by several different methods, and the State may allege and prove any one or all of those various methods in its attempt to establish the defendant's guilt. This Court held in Sisson v. State, 528 So.2d 1159 (Ala.1988), that when a statute provides alternative or different methods of committing the same offense, each alternative method is not to be treated as a separate offense. Because we are dealing here with a single statute (§ 13A-6-2(a)(3)) that defines a single offense, the Blockburger test is not applicable. See, e.g., Sanabria v. United States, 437 U.S. 54, 70, n. 24, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) ("Because only a single violation of a single statute is at issue here, we do not analyze this case under the so-called `same evidence' test, which is frequently used to determine whether a single transaction may give rise to separate *151 prosecutions, convictions, and/or punishments under separate statutes").
The sole remaining question is whether the Legislature has clearly expressed an intent to impose two life sentences for one murder. Our research has disclosed nothing that would indicate an intent on the Legislature's part to authorize the imposition of separate sentences corresponding to each method by which the offense stated in § 13A-6-2(a)(3) may be committed. In this regard, the Legislature has done nothing more than classify the offense of "murder" as a class A felony, and it has authorized only one sentence of imprisonment for that offense"life or not more than 99 years or less than 10 years."
Based on what we have stated above, we conclude that the trial court erred in adjudging Rice guilty of two murders and in sentencing him twice for his violation of § 13A-6-2(a)(3). Our conclusion is consistent with decisions of the Court of Criminal Appeals holding that a defendant who commits one killing generally cannot legally be convicted and sentenced for two murders, see, e.g., Rolling v. State, 673 So.2d 812 (Ala.Crim.App.1995); Meyer v. State, 575 So.2d 1212 (Ala.Crim.App.1990); Coral v. State, 628 So.2d 954 (Ala.Crim.App. 1992), aff'd, 628 So.2d 1004 (Ala.1993); Loggins v. State, [Ms. CR-95-1545, April 30, 1999] ___ So.2d ___ (Ala.Crim.App. 1999). It is also consistent with the decisions of other jurisdictions that have addressed the issue, see, e.g., Gray v. State, 463 P.2d 897, 911 (Alaska 1970) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Arnett, 158 Ariz. 15, 19-20, 760 P.2d 1064, 1068-69 (1988) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); People v. Lowe, 660 P.2d 1261, 1269-71 (Colo.1983) (holding that a defendant cannot be convicted of both murder after deliberation and felony murder); State v. Chicano, 216 Conn. 699, 705-11, 584 A.2d 425, 429-31 (1990) (holding that a defendant cannot be convicted of both felony murder and first-degree manslaughter as a lesser included offense of intentional murder); State v. Lewis, 245 Conn. 779, 818, 717 A.2d 1140, 1161 (1998) (holding that a defendant cannot be convicted of both murder and felony murder); Gaskin v. State, 591 So.2d 917, 920 (Fla.1991), vacated on other grounds, 505 U.S. 1244, 113 S.Ct. 22, 120 L.Ed.2d 948 (1992) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); Pressley v. State, 235 Ga. 341, 219 S.E.2d 418 (1975) (holding that a defendant cannot be convicted of both malice murder and felony murder); Chavez v. State, 534 N.E.2d 731, 739 (Ind.1989) (holding that a defendant cannot be convicted of both murder and felony murder); People v. Pitsonbarger, 142 Ill.2d 353, 154 Ill.Dec. 562, 568 N.E.2d 783, 792 (1990) (holding that a defendant cannot be convicted of both intentional murder and felony murder), vacated on other grounds; State v. Gilroy, 199 N.W.2d 63, 68 (Iowa 1972) (holding that a defendant cannot be convicted of both premeditated murder and murder in perpetration of robbery); State v. Sullivan, 224 Kan. 110, 112, 578 P.2d 1108, 1111-12 (1978) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Dechaine, 572 A.2d 130, 136 (Me. 1990) (holding that a defendant cannot be convicted of both intentional or knowing murder and depraved-indifference murder); Wooten-Bey v. State, 308 Md. 534, 520 A.2d 1090, 1092 (1987) (stating that a defendant cannot be convicted of both premeditated murder and felony murder); People v. Densmore, 87 Mich.App. 434, 440-41, 274 N.W.2d 811, 814 (1978) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Grayson, 546 N.W.2d 731, 739 (Minn.1996) (holding that a defendant cannot be convicted of two variations of murder); State v. White, 254 Neb. 566, 577 N.W.2d 741, 745-48 (1998) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Watson, 261 N.J.Super. 169, 618 *152 A.2d 367, 373 (1992) (holding that a defendant cannot be convicted of both purposeful and knowing murder and felony murder); State v. Wilson, 345 N.C. 119, 123, 478 S.E.2d 507, 510 (1996) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Huertas, 51 Ohio St.3d 22, 28, 553 N.E.2d 1058, 1066 (1990) (holding that a defendant cannot be convicted of both aggravated murder with prior calculation and design, and aggravated murder in the course of aggravated burglary); State v. White, 549 N.W.2d 676, 681 (S.D.1996) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Hurley, 876 S.W.2d 57, 69-70 (Tenn.1993) (holding that a defendant cannot be convicted of both premeditated murder and felony murder), superseded by statute; Ervin v. State, 991 S.W.2d 804 (Tex.Crim.App.1999) (holding that a defendant cannot be convicted of both manslaughter and intoxication manslaughter); Clagett v. Commonwealth, 252 Va. 79, 95-96, 472 S.E.2d 263, 273 (1996) (holding that a defendant who killed more than one person cannot, as to each victim, be convicted of capital murder for the murder of multiple persons); Byrd v. United States, 510 A.2d 1035, 1036-37 (D.C.App. 1986, en banc) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); cf., State v. Landgraf, 121 N.M. 445, 453, 913 P.2d 252, 261-62 (App.1996) (holding that a defendant cannot be convicted of two variations of vehicular homicide).
To the extent that Weaver v. State, supra, is inconsistent with our decision in this case, it is hereby overruled.
The judgment of the Court of Criminal Appeals is reversed and the case is remanded for further proceedings consistent with this opinion. We note that merely ordering that Rice's sentences run concurrently is not a constitutionally acceptable option. The Supreme Court stated in Ball v. United States, 470 U.S. 856, 864-65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985):
"The remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Congress' intention. One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense. See Missouri v. Hunter, 459 U.S. 359, 368[, 103 S.Ct. 673, 74 L.Ed.2d 535] (1983).
"The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. See Benton v. Maryland, 395 U.S. 784, 790-91[, 89 S.Ct. 2056, 23 L.Ed.2d 707] (1969); Sibron v. New York, 392 U.S. 40, 54-56[, 88 S.Ct. 1889, 20 L.Ed.2d 917] (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment."
See, also, Rolling v. State, supra.
Neither is it an acceptable option to merely vacate one of Rice's convictions and its corresponding sentence. The jury specifically found that Rice had violated § 13A-6-2(a)(3) in two different waysby participating in a kidnapping and causing Taylor's death and by participating in a robbery and causing Taylor's death. Based on the record before us, an appellate court's vacating one of Rice's convictions and its corresponding sentence would have the effect, albeit unintended, of nullifying a part of the jury's verdict. We think the better approach is for the Court *153 of Criminal Appeals to remand the case to the trial court for the entry of a new orderan order that adjudges Rice guilty of Taylor's murder and sentences him for that single offense.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, LYONS, and ENGLAND, JJ., concur.
JOHNSTONE, J., concurs specially.
BROWN, J., recuses herself.[*]
JOHNSTONE, Justice (concurring specially).
I concur specially because I am concerned about the breadth of some of the language in the opinion of the Court. Specifically, the opinion cites Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), for these two propositions, stated here in the language of this Court, not the United States Supreme Court:
"[The Double Jeopardy Clause] does not prohibit the legislature from authorizing the imposition of cumulative sentences for what amounts to the same offense, provided the legislative intent to do so is clear and the prosecutions and convictions occur in a single trial." 766 So.2d at 148.
"Thus, the Supreme Court has cleared the way for a State legislature to authorize the imposition of multiple sentences for the commission of statutorily separate offenses that must be taken as the same offense under the Blockburger test, provided it clearly expresses its intent to do so. Logically, then, a State legislature would not violate the Double Jeopardy Clause by imposing multiple sentences for the commission of a single statutory offense, provided it clearly expresses its intent to do so. For example, a State legislature could provide for two or more different methods by which an offense stated in a single statute may be committed and, consistent with the protections afforded by the Double Jeopardy Clause, authorize the imposition of separate sentences corresponding to each method by which the offense was committed." 766 So.2d at 149-50.
The holding of Missouri v. Hunter, supra, is, of course, limited by its facts. There, the convictions and punishments held not to violate the Double Jeopardy Clause were convictions for "robbery in the first degree" as defined by a Missouri statute and "armed criminal action" as defined by another Missouri statute, and the sentences were concurrent sentences of 10 years for the robbery in the first degree and 15 years for the armed criminal action. The armed criminal action statute was, in essence, a penalty enhancement statute like the Alabama statutes adding years of imprisonment to the term for the underlying offense for using a firearm or deadly weapon in the commission of a felony, § 13A-5-6(a)(4) and (5), Ala.Code 1975, or for being within a three-mile radius of a school or public housing project while selling illegal drugs, § 13A-12-250 and § 13A-12-270, Ala.Code 1975.
Noteworthily, the Missouri v. Hunter Court found and held:
"Here, the Missouri Supreme Court has construed the two statutes at issue as defining the same crime. In addition, the Missouri Supreme Court has recognized that the legislature intended that punishment for violations of the statutes be cumulative. We are bound to accept the Missouri court's construction of that State's statutes."
459 U.S. at 368, 103 S.Ct. 673. This finding and holding should foreclose any future misinterpretation that convictions under these two statutes resulting from a single robbery could be counted as two separate convictions for such purposes as sentence enhancement under habitual felony offender laws.
*154 The holding of Missouri v. Hunter affirming these particular convictions and concurrent sentences should not prompt us, far outside and beyond the facts of either that case or the one before us, to invite and probably to mislead the legislature into experiments with the Double Jeopardy Clause, which has already suffered its share of abuse at the hands of legislatures and courts across the land. The majority opinion and the dissent in Missouri v. Hunter reveal examples.
NOTES
[1] A detailed recitation of the facts surrounding Taylor's murder is not necessary to a resolution of the issue presented in this case. Suffice it to say that the evidence introduced at the trial indicated that Rice and others were involved in the abduction and robbery of Taylor and that Taylor was killed in the process.
[2] Although Rice raised other issues in his petition, we granted certiorari review to consider only his double-jeopardy argument. That argument is based solely on the Double Jeopardy Clause of the Fifth Amendment; he makes no argument concerning Article I, § 9, of the Alabama Constitution.
[3] Although the jurisprudence is well settled in most cases involving the Double Jeopardy Clause, as well as the virtually identical language in Article 1, Section 9, of the Alabama Constitution ("no person shall, for the same offense, be twice put in jeopardy of life or limb"), it is curious that double jeopardy should be a concern when it is only the "liberty" of a person that is in jeopardy, not his or her "life or limb." After all, the Framers used the term "liberty" elsewhere in the Fifth Amendment, but not in the Double Jeopardy Clause. The Fifth Amendment provides, in full:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."
(Emphasis added.)
It would seem apparent that incarceration or fines would not be within the meaning of the term "limb," and there is a clear differentiation in the text between the meanings of the terms "life" and "liberty." Why, then, looking at the Federal and State provisions from a strict-constructionist viewpoint, does double jeopardy become an issue when something other than death or bodily injury is threatened? The answer is found in the United States Supreme Court's opinion in Ex parte Lange, 85 U.S. (18 Wall.) 163[, 21 L.Ed. 872] (1874). In Lange, the Court decided that the phrase "jeopardy of life or limb" was not to be taken literally, but rather as a term of art that encompassed all risk of punishment for criminal offenses. Under the Supremacy Clause, we are bound to follow this interpretation with regard to the Fifth Amendment. Also, because most State double-jeopardy provisions, like Alabama's, have wording similar to the Double Jeopardy Clause of the Fifth Amendment, the Lange interpretation has been received with almost universal acceptance by the States. But see Commonwealth v. Simpson, 310 Pa. 380, 165 A. 498 (1933).
For an extended discussion of the Lange opinion, see Stephen N. Limbaugh, Jr., The Case of Ex parte Lange (or How the Double Jeopardy Clause Lost Its "Life or Limb"), 36 Am.Crim. L.Rev. 53 (1999).
[*] Justice Brown was a member of the Court of this case. Criminal Appeals when that court considered this case.