[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1229 
Cuhuatemoc Hinricky Peraita appeals his conviction on two counts of capital murder and his resulting sentence of death. The Court of Criminal Appeals affirmed his conviction and his sentence. Peraita v. State, [Ms. CR-01-0289, May 30, 2003] ___ So.2d ___ (Ala.Crim.App. 2003). Peraita petitioned this Court for a writ of certiorari, and we granted that petition as to four issues. We affirm.
 Facts and Procedural History
The record reveals the following facts. Peraita is an inmate in Holman Correctional Facility. At the time of the incident resulting in the capital murder convictions, he was serving a sentence of life imprisonment as the result of earlier convictions for murder. At some time during his incarceration, he broke off a homosexual relationship with fellow inmate Quincy Lewis and began another homosexual relationship with inmate Michael Castillo. After Peraita began his relationship with Castillo, Lewis often threatened Peraita and Castillo.
In the early hours of December 11, 1999, Peraita and Castillo were sitting on or near Castillo's bunk bed in a dormitory-like room housing several inmates. Lewis walked toward Castillo's bed and sat on a bed across from Castillo's, facing Castillo and Peraita. Peraita stood to leave and walk back to his bunk bed. As he did, Lewis stood up and slapped Peraita on his face. Peraita did not respond, but continued walking to his bed.
Minutes later, Peraita returned to Castillo's bed. Lewis was still sitting on the bed across from Castillo's, Peraita sat down, remained seated for a few minutes, then stood to leave. However, instead of leaving, Peraita grabbed Lewis's head and snapped it back. Castillo then drew a knife and stabbed Lewis multiple times in the neck and other areas; he also accidentally stabbed Peraita. Lewis died later that morning.
Peraita was charged with two counts of capital murder. Count one alleged a violation of Ala. Code 1975, § 13A-5-40(a)(6), which classifies as a capital offense "[m]urder committed while the defendant is under sentence of life imprisonment." His *Page 1230 
indictment on that count stated that he committed intentional murder while "under a sentence of life imprisonment imposed bythe Circuit Court of Etowah County, Alabama." (Emphasis added.) Count two alleged a violation of Ala. Code 1975, § 13A-5-40(a)(13), which classifies as a capital offense "[m]urder by a defendant who has been convicted of any other murder in the 20 years preceding the crime." His indictment on this count stated that he committed intentional murder "after having been convicted of murder within the preceding twenty years in theCircuit Court of Etowah County, Alabama." (Emphasis added.)
Before trial, Peraita agreed to stipulate to his six prior convictions that resulted in his sentence of life imprisonment,[1] and his counsel drafted a proposed stipulation. For each count, the stipulation tracked the language of the capital-offenses statute, Ala. Code 1975, §§ 13A-5-40(a)(6) and (13), respectively. The State refused to accept Peraita's proposed stipulations, stating that they were "factually incomplete and inaccurate." The State proposed six stipulations, which, for each prior conviction, recounted the date, the name of the offense, the sentence imposed, and the case number and indicated the circuit court that had imposed the sentence. The stipulations proposed by the State contained no facts concerning the nature of the underlying crimes or the events surrounding them. Peraita rejected the State's proposed stipulations.
The trial court allowed the State to introduce documents evidencing Peraita's prior convictions for purposes of proving the capital offenses. Those documents were heavily redacted, detailing no facts concerning the nature of Peraita's past offenses. Most pages were either case-action summaries, jury verdict forms, or similar "housekeeping" documents. The court determined that the documents were relevant for the State to meet its burden of proof, and that the probative value of the documents outweighed any unfair prejudice that might be generated by their introduction.
After the State rested its case, Peraita's attorneys attempted to introduce the testimony of Dr. Craig Haney, a psychologist. Dr. Haney was called for the stated purpose of discussing the theory of "institutionalization," whether Peraita had undergone institutionalization, and whether institutionalization could have affected Peraita's state of mind so as to validate his claim that he killed Lewis in self-defense. The court excluded Dr. Haney's testimony.
Peraita also attempted to introduce evidence indicating that Lewis had a reputation for being violent. Michael Best, a fellow inmate of Peraita and Lewis's, testified that Lewis "had a tendency to prey upon young white dudes that came in" to Holman Correctional Facility. The trial court struck Best's comment and instructed the jury to disregard it. Jimmy Harden, another fellow inmate, testified that Lewis had a reputation as "a notorious knife-fighter . . . and homosexual stalker." The trial court struck Harden's testimony and instructed the jury to disregard it also. The jury, however, was allowed to hear Best's and Harden's testimony that Lewis had a reputation for being "violent" and "sexually violent."
Peraita was convicted of both counts of capital murder. He appealed his conviction *Page 1231 
to the Court of Criminal Appeals, which affirmed his conviction. He then petitioned this Court for the writ of certiorari, which we granted as to the following four issues:
 1. Whether evidence of the theory of "institutionalization" of prison inmates, as that evidence would bear on Peraita's claim that he killed Lewis in self-defense, was improperly excluded;
 2. Whether some parts of the testimony of two fellow inmates, Best and Harden, concerning Lewis's violent nature was properly excluded;
 3. Whether the State was required to accept Peraita's stipulations as to his prior convictions; and
 4. Whether Peraita's conviction for two counts of capital murder for the murder of Lewis violated his right to be free from double jeopardy.
 Standard of Review
A trial court's order governing the admission or exclusion of evidence constitutes reversible error when the trial court has exceeded its discretion in admitting or excluding the evidence.Ex parte Loggins, 771 So.2d 1093, 1103 (Ala. 2000). Where an issue presents a pure question of law, such as one relating to a defendant's constitutional rights, this Court's review is de novo. See Ex parte Morrow, [Ms. 1021059, April 9, 2004] ___ So.2d ___, ___ (Ala. 2004).
 A. Institutionalization
Peraita argues that "institutionalization" is a psychological phenomenon among prison inmates analogous to battered women's syndrome ("BWS"). He argues that, like BWS, which causes a victim of domestic abuse to believe that she has no way to escape her abuser, institutionalization convinces an inmate that he cannot seek help from prison authorities because if he did prisoners other than his abuser would subsequently victimize him.
In order to prove his institutionalization theory, Peraita attempted to introduce the testimony of Dr. Haney, a professor of psychology and an expert in prison psychology. Peraita contends that Dr. Haney is familiar with the Holman Correctional Facility, and Peraita notes that, after interviewing him, Dr. Haney determined that Peraita suffered from institutionalization. However, while Dr. Haney had been inside the facility multiple times, he had "toured" the facility only once, in 1994, years before Peraita arrived at the facility. Additionally, Dr. Haney conducted his three- or four-hour interview of Peraita in May 2001, nearly one and a half years after Peraita had killed Lewis. Dr. Haney conceded that there is no specific timetable in which institutionalization occurs.
Moreover, while Dr. Haney testified that institutionalization might lead Peraita to believe that retaliation against Lewis was "reasonable," Dr. Haney did not testify that actions Peraita took in retaliation were reasonable. His testimony was limited to explaining the theory and process of institutionalization and expressing his opinion that, at least as of May 2001, when he interviewed him, Peraita had become institutionalized.
The trial court excluded this evidence. The judge ruled that the introduction of Dr. Haney's testimony might cause jurors to view the reasonableness of Peraita's belief that he could not escape Lewis in a subjective, rather than an objective, light. Although the State argues that the court excluded Dr. Haney's testimony as being irrelevant, it appears that the trial judge was more concerned that the testimony would mislead the jury or confuse the issue, matters addressed by Rule 403, *Page 1232 
Ala. R. Evid. However, the standard of review is the same regardless of whether he excluded the testimony because it was irrelevant or because it would mislead the jury or confuse the issue.
For this Court to reverse the judgment of the trial court on this issue, we must find that the court exceeded its discretion in excluding Dr. Haney's testimony. Loggins, 771 So.2d at 1103. Given Dr. Haney's bare familiarity with Holman Correctional Facility, the long period of time between Peraita's crime and his interview with Dr. Haney, and the confusion that this evidence might cause the jury, we cannot say that the trial judge exceeded his discretion in excluding Dr. Haney's testimony.
 B. Reputation Evidence
Peraita next argues that the trial court should not have excluded the testimony of Peraita's fellow inmates Best and Harden that constituted reputation evidence. Peraita claims (1) that Best's testimony that Lewis "had a tendency to prey upon young white dudes that came in" to Holman Correctional Facility was improperly excluded and (2) that Harden's testimony that Lewis had a reputation as "a notorious knife-fighter . . . and homosexual stalker" was improperly excluded.
Rule 404(a)(2)(A)(i), Ala. R. Evid., permits the introduction of "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused." Such evidence must be in the form of reputation or opinion. Ala. R. Evid. 405(a). We have hewn to a narrow list of the "pertinent traits" of a victim of a crime that can be brought out through testimony, such as violence or peacefulness. Advisory Committee's Notes to Ala. R. Evid. 404(a)(2)(A); Bankston v. State, 358 So.2d 1040, 1041 (Ala. 1978) (allowing evidence of victim's reputation for violence, turbulence, or bloodthirstiness). We have excluded numerous "traits" as not being sufficiently "pertinent" to be admitted under this rule. Jones v. State, 38 Ala.App. 325, 326,83 So.2d 68, 69 (1955) (disallowing evidence that victim was uncompromising); Williams v. State, 21 Ala.App. 227, 228,107 So. 37, 37-8 (1925) (disallowing evidence that victim was temperamental); Lambert v. State, 208 Ala. 42, 43, 93 So. 708,709 (1922) (disallowing evidence that victim was easily provoked and "awfully mean"); Murphy v. State, 14 Ala.App. 78, 86,71 So. 967, 970-71 (1916) (disallowing evidence that victim was fussy and disagreeable).
In the case before us, Best was allowed to testify that Lewis had a reputation for being "sexually violent." Even that testimony was objected to by the prosecution as not being pertinent. However, the judge overruled the objection and allowed the testimony. Harden was allowed to testify that Lewis had a reputation for violence, testimony that was certainly within the bounds of Rule 404(a)(2)(A)(i).
The remainder of Best's and Harden's testimony was properly excluded for two reasons. First, the suggested character traits conveyed by that testimony fall outside the bounds of what we consider to be "pertinent" under Rule 404(a)(2)(A)(i). Second, as the Court of Criminal Appeals correctly observed, "the excluded statements addressed specific conduct by Lewis, rather than general opinion or reputation evidence." Peraita, ___ So.2d at ___. That is, the excluded testimony of Best and Harden constituted evidence of specific conduct by Lewis, cloaked in the language of reputation evidence.
Because such evidence clearly violates Rule 404(a)(2)(A), the trial judge did not exceed his discretion in excluding this evidence. There is no reversible error as to this ground. *Page 1233 
 C. Stipulations
Peraita's third ground of appeal concerns the State's rejection of his offer to stipulate to his prior convictions. Peraita argues that the court should have required the State to accept his stipulation.
On March 19, 1996, Peraita was convicted of six separate offenses for which the Etowah Circuit Court sentenced him to life imprisonment without the possibility of parole. These convictions all stemmed from an attempted robbery. Three of those convictions were for the murders of three individuals, another conviction was for the capital offense of murdering two or more people pursuant to one course of conduct, one conviction was for attempted murder, and one conviction was for robbery.
Anticipating that the State might choose to use the convictions at trial, Peraita filed a motion offering to stipulate to having been convicted of capital murder within the past 20 years and to having been serving a sentence of life imprisonment at the time of the incident for which he was on trial. The State rejected Peraita's offer; however, it offered to stipulate as to each of the six convictions, the offense for which the conviction was secured, the court in which Peraita was convicted, the date of the conviction, and the case number. Peraita rejected the State's offer to so stipulate.
After a hearing on the matter, the trial court ruled that the State could present the following evidence as to the prior convictions: (1) the court of conviction, (2) the date of the conviction, (3) the sentence imposed, and (4) in the murder cases, evidence to prove that the offense constituted a murder. At no time was the State permitted to offer evidence of any details of the offenses, such as the identity of the victims or the nature of the murders.
At trial, the State introduced as to each conviction (1) the jury verdict form showing the date of the conviction, (2) a redacted copy of the "Report of Trial and Jury Verdict with Recommendation" that showed that the trial court found him guilty of the charged offense, and (3) a redacted copy of the order sentencing him to life imprisonment without the possibility of parole. The case-action summary sheet from one of the murder convictions was introduced. Pursuant to the trial court's ruling, the State introduced less evidence concerning Peraita's attempted-murder and robbery convictions. The only documents admitted as evidence of those convictions were redacted copies of the "Judgment of the Court" showing (1) that Peraita was convicted and (2) that he was sentenced to life imprisonment (3) on a certain date.
There is no dispute that the State followed the trial judge's orders. Likewise, Peraita appears to have no objection to the disclosure of the sentences imposed. And certainly, Peraita could not object to the nature of the disclosed offense — murder — because his stipulation admitted that he had committed a prior murder. His objection necessarily stems from evidence concerning either the court in which he was convicted, the date on which he was convicted, or the cumulative nature of the convictions.
Peraita's argument is based upon Rule 403, Ala. R. Evid.[2] The trial court's decision was that the probative value of introducing evidence of those convictions was not substantially outweighed by the prejudice *Page 1234 
to Peraita that would necessarily arise from the evidence of those convictions. Peraita argues that the trial court exceeded its discretion by admitting the records of his convictions.
Peraita argues that his position is supported by the United States Supreme Court's decision in Old Chief v. United States,519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). In that case, a criminal defendant sought to stipulate to his status as a felon, because he was being prosecuted under18 U.S.C. § 922(g)(1), which prohibits possession of a firearm by anyone who has a prior felony conviction. Old Chief, 519 U.S. at 175-76,117 S.Ct. 644. The defendant had argued that if a jury were to learn the nature of the offense that had resulted in his prior conviction — assault causing serious bodily injury — it would be swayed by unfair prejudice to convict him of the offense with which he was then charged. 519 U.S. at 180, 117 S.Ct. 644. Despite the defendant's objection, the prosecutor introduced a document naming the crime for which the defendant had previously been convicted. 519 U.S. at 177, 117 S.Ct. 644. The Supreme Court held that Rule 403, Fed.R.Evid., allows a court to assess an "evidentiary item's twin tendencies" — its probative value versus its prejudicial nature — and place "the result of that assessment alongside similar assessments of evidentiary alternatives."519 U.S. at 184-85, 117 S.Ct. 644. The Court noted that while a prosecutor should be free to prove a case any way he desires, such a notion "has . . . virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." 519 U.S. at 190,117 S.Ct. 644. However, as the Court also emphasized, "[t]he issue is . . . whether the name or general character of [the defendant's previous] crime is to be disclosed. Congress . . . has made it plain that distinctions among generic felonies do not count for this purpose; the fact of the qualifying conviction is alone what matters under the statute." 519 U.S. at 190,117 S.Ct. 644 (emphasis added). Weighing the competing methods of proving the defendant's status as a felon, the Court determined that the trial court had exceeded its discretion in allowing the prosecutor to introduce documents instead of approving the defendant's stipulation. 519 U.S. at 191, 117 S.Ct. 644.
Old Chief was a 5-4 decision, with a vigorous dissent by Justice O'Connor, joined by Chief Justice Rehnquist and Justices Scalia and Thomas. The dissent stated that the majority had "misapplie[d] Federal Rule of Evidence 403 and upset, without explanation, longstanding precedent regarding criminal prosecutions." 519 U.S. at 192, 117 S.Ct. 644 (O'Connor, J., dissenting).
Many state courts have distinguished Old Chief and have refused to follow that case. In Louisiana v. Ball,756 So.2d 275, 277-80 (La. 1999), the Louisiana Supreme Court raised three objections to following the precedent set by Old Chief. First, that court found that Old Chief "was not based on constitutional principles which would be binding on the states, but instead was based on the specific language of18 U.S.C. § 922." Ball, 756 So.2d at 278. Second, the court noted that the federal statute was broadly defined to deal with "generic" felons, as opposed to the Louisiana statute, which enumerated certain offenses. Id.; see also Sisson v. State,232 Ga.App. 61, 499 S.E.2d 422, 427 (1998); Maibauer v. State,968 S.W.2d 502, 507 (Tex.App. 1998); State v. Hamilton, 327 S.C. 440,486 S.E.2d 512, 515 (Ct.App. 1997). Third, the court found that proving the name of the offense resulting in the conviction was often less prejudicial than *Page 1235 
telling the jury that the defendant was a convicted felon.756 So.2d at 279. Fourth, the court made clear that to fulfill the defendant's request, numerous evidentiary documents would have to be ignored or altered, or the same damaging information would come out. 756 So.2d at 280. Finally, the Louisiana court disagreed with the proposition espoused in Old Chief that the prosecution is in any way limited in how it proves its case.756 So.2d at 280.
The concerns raised by both the dissent in Old Chief as well as those raised in Ball cause us to hesitate in adopting OldChief for the first time in Alabama. That decision may be inapplicable to any situation save a situation involving the federal firearm statute under which Old Chief was decided. The dissent criticized the opinion for straying from established procedure. See Old Chief, 519 U.S. at 192-201, 117 S.Ct. 644
(O'Connor, J., dissenting). Even assuming that Old Chief was correctly decided and that it was meant to apply to all Rule 403 situations, Old Chief is factually distinguished from this case, because here we deal with a highly specific statute as opposed to the "generic" felon statute presented there. In addition, we also have concerns about limiting the manner in which a prosecutor may prove his case. Whether we should or must one day hail Old Chief as the law on the balancing test of Rule 403, that day is not here, because this case is distinguishable. Therefore, we decline to apply Old Chief to this case.
Peraita also directs our attention to Graves v. State,632 So.2d 33 (Ala. 1993), in which we reversed a manslaughter conviction after the State introduced prejudicial evidence of the defendant's prior conviction for manslaughter. Graves,632 So.2d at 37. In that case, Graves had been charged with both (1) murder and (2) possession of a pistol after having been previously convicted of a "crime of violence," specifically manslaughter. Both charges were consolidated for trial, and evidence of his prior conviction was necessary to prove the possession-of-a-pistol charge. However, we held that the evidence that he had previously been convicted of manslaughter prejudiced Graves in the trial of his murder charge, noting:
 "Evidence of the prior conviction would not have been admissible in Graves's trial on the murder charge, if it had been tried separately, because the prior conviction was separate and completely unrelated."
Graves, 632 So.2d at 36.
In contrast, Peraita's capital-murder conviction is directly related to his prior murder convictions. Indeed, his conviction of the two counts of capital murder would be impossible without the prior murder convictions or life sentence. Graves is distinguishable from this case.
Particularly noteworthy in this case is the fact that the State did not merely reject Peraita's proposed stipulations and seek to bombard the jury with evidence showing that Peraita is a "cold-blooded killer." Rather, the State offered its own stipulations, which differed little from the stipulations submitted by Peraita. Yet Peraita rejected the stipulations proposed by the State. The State then carefully sought direction from the trial court, which itself sought to fairly assess the proper evidence for the State to admit. The State followed the directions of the trial court, introducing little substantive information, but enough to prove the allegations in the capital-murder indictment.
Because the trial court is vested with significant discretion, because little or no binding precedent existed to guide that court on this issue, and because the court carefully considered every argument submitted, we must afford the trial court the benefit of the doubt in this difficult decision. *Page 1236 
From the evidence presented, we simply cannot find that the trial court exceeded its discretion in allowing evidence of Peraita's prior convictions.
 D. Double Jeopardy
The State charged Peraita with two counts of capital murder for the death of one individual. Peraita argues that this "double charging" violated his right not to be subjected to double jeopardy.
Peraita argues that both state and federal law prohibit a state from subjecting a defendant to double jeopardy, and that the indictment charging him sought to exact "multiple prosecutions" for the same offense. Blockburger v. United States,284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
The Blockburger test is aimed at, among other things," `multiple punishments imposed in a single prosecution.'" Gradyv. Corbin, 495 U.S. 508, 516-17, 110 S.Ct. 2084, 109 L.Ed.2d 548
(1990) (quoting Garrett v. United States, 471 U.S. 773, 778,105 S.Ct. 2407, 85 L.Ed.2d 764 (1985)). Peraita argues that conviction of two counts of capital murder for the killing of a single person constitutes such multiple punishment. He citesMeyer v. State, 575 So.2d 1212 (Ala.Crim.App. 1990), and Exparte Rice, 766 So.2d 143 (Ala. 1999), for the proposition that multiple charges from the same statute violate double-jeopardy principles.
The defendant in Meyer was charged with capital murder and indicted for three counts of capital murder for the killing of one person. His indictment alleged that he committed the murder while committing robbery of three separate items. The Court of Criminal Appeals held that these three allegations were merely three "`alternative methods of proving the same crime, and therefore, did not constitute separate offenses.'" Meyer,575 So.2d at 1217 (quoting Sisson v. State, 528 So.2d 1159, 1162
(Ala. 1988)).
In Rice, the defendant was charged with two counts of capital murder for the killing of one individual during a robbery and a kidnapping; he was convicted of two counts of "the crime of murder" under Ala. Code 1975, § 13A-6-2(a)(3), specifically the lesser-included offense of felony murder. This Court held that, much like Meyer and Sisson, each count in Rice was an alternative method of proving but a single crime.
In contrast to Meyer and Rice, the two capital-murder charges against Peraita are separate offenses. Each count of capital murder is a separate offense, as shown by the beginning of the statute defining capital offenses, which provides, "The following are capital offenses." Ala. Code 1975, § 13A-5-40(a). So long as each count of the crime concerns a separate offense, as opposed to a separate method of proving that offense, the double-jeopardy provision of the United States Constitution is not implicated. We hold that Peraita's right to be free from double jeopardy was not violated by his having been tried and convicted of two counts of capital murder for the killing of one individual.
We find no merit to any of Peraita's arguments; consequently, we affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., dissents.
[1] Those six convictions resulted from one attempted robbery. Three of the convictions were for three murders that occurred during the attempted robbery; one conviction was for the capital offense of murdering two or more persons pursuant to one course of conduct; one conviction was for attempted murder; and one conviction was for robbery.
[2] Rule 403, Ala. R. Evid., provides:
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."